## Commonwealth *vs.* Robert Benjamin.

Suffolk.    November 4, 1986. — February 12, 1987.

Present: Hennessey, C.J., Wilkins, Nolan, Lynch, & O'Connor, JJ.

*Evidence,* Admissions and confessions. *Practice, Criminal,* Argument by
prosecutor, Instructions to jury. *Homicide. Felony-Murder Rule.*

The record in a murder case warranted the conclusion beyond a reasonable
   doubt that the police had informed the defendant of his Miranda rights
   before he made a statement in which he admitted shooting the victim,
   that he waived his right to remain silent, and that the waiver was both
   intelligent and voluntary. [222-223]
At a murder trial the judge's curative instruction to the jury adequately
   treated certain comments by the prosecutor during closing argument to
   which the defendant's objection had been sustained on the basis that
   they were not supported by evidence. [223-224]
The judge's instructions to the jury at a murder trial properly explained the
   circumstances in which the defendant could be convicted of murder in
   the first or the second degree, and included appropriate statements that
   it was the jury's function to determine the degree of murder; that "[a]
   killing, whether intentional or accidental, committed in the perpetration
   of the crime of armed robbery . . . is murder in the first degree"; and
   that it was their duty to return a verdict of the highest crime proved
   against the defendant. [224-226]

INDICTMENTS found and returned in the Superior Court De-
partment on November 16, 1982.

The cases were tried before *Elizabeth A. Porada,* J.

*Willie J. Davis* for the defendant.

*Judy G. Zeprun,* Assistant District Attorney (*Timothy M.
Burke* with her) for the Commonwealth.

LYNCH, J. After trial in the Superior Court, the defendant
was convicted of murder in the first degree, armed robbery,
and unlawfully carrying a firearm. He appeals, claiming error
concerning (1) the admission in evidence of statements made
by him to police officers; (2) certain comments of the prosecutor

during closing argument; and (3) the judge's charge to the jury. He also urges us to exercise our powers under G. L. c. 278, § 33E, and direct the entry of a verdict of murder in the second degree. We conclude the trial judge's rulings were not erroneous, and find no reason to exercise our power under G. L. c. 278, § 33E. We affirm.

The relevant facts may be summarized as follows. On November 3, 1982, Monpoint Jacques, a taxi driver, was shot and killed on Oldsfield Road in Dorchester. The defendant was arrested at his sister's apartment in Cambridge on November 7, 1982. Making the arrest were two Boston police detectives accompanied by two uniformed Boston officers and two Cambridge officers. The defendant was given Miranda warnings at that time and again at the Cambridge police station, where he was taken for a "courtesy booking." There was no conversation with the defendant at either place. Nor was there conversation on the ride from Cambridge to District 2 of the Boston police department.

Upon arriving at District 2, the defendant was booked and again advised of his Miranda rights. Soon thereafter, the defendant was introduced to Sergeant Stephen Murphy of the Boston police homicide unit who repeated the Miranda warnings to the defendant. Sergeant Murphy outlined for the defendant how he knew that he (the defendant) was connected with the death of Jacques. Sergeant Murphy told the defendant that his brother, Royal, and one Steven Henderson were also under arrest, present at the station and charged with the same offense. The defendant was also told that his brother had made a statement regarding Jacques' murder.

Prior to making a statement, the defendant said that he was confused as to how he was arrested. Sergeant Murphy explained that there had been an informant, but did not give the name. After further conversation, the defendant was advised of his Miranda rights a final time before proceeding to make a statement to Sergeant Murphy which was recorded on tape. During the course of the statement, the defendant again stated that he was confused notwithstanding the previous explanation given by Sergeant Murphy.

In the statement the defendant described the events leading to the shooting. He stated that he, his brother Royal, and Henderson got into a cab; he was seated behind the driver, Henderson got in the middle and Royal sat behind the passenger seat. Earlier, there had been a discussion about "doin' a stick-up." When asked whose idea it was to rob the cab in the first place, the defendant responded that "[i]t was just somethin' that came up."

According to the defendant, Royal told the driver, Jacques, to go to Oldsfield Road, a dead end street. When they arrived Royal passed a gun to the defendant and told him "to get out and do somethin'." Royal instructed the defendant "to jump out first and stick the gun up to his [Jacques'] head." The defendant jumped out when the cab stopped and put the gun to the head of Jacques. The defendant said that the gun just went off "accidentally" as Jacques attempted to roll up the window. One shot was fired. Henderson then pulled Jacques from the cab and took seven dollars from him. The money was split three ways. The defendant received three dollars; Royal and Henderson took two dollars each.

1. On appeal, the defendant contends that the record does not demonstrate that the defendant understood his Miranda rights. We disagree. The record amply supports that the defendant was informed of his Miranda rights; that he waived his right to remain silent, and that the waiver was both intelligent and voluntary.

It is well settled that before any statement made by a defendant under arrest is admitted in evidence, the Commonwealth must prove beyond a reasonable doubt that the statement was made voluntarily. *Commonwealth* v. *Tavares*, 385 Mass. 140 (1982). The Commonwealth must also prove beyond a reasonable doubt that a defendant making a statement has knowingly and intelligently waived all Miranda rights. *Commonwealth* v. *Day*, 387 Mass. 915 (1983). After completion of the voir dire hearing, the trial judge ruled that the defendant had made a voluntary, intelligent, knowing statement that was the product of a rational intellect. "Such findings as to intelligent and voluntary waiver, or the absence thereof, are entitled to substan-

tial deference by this court." *Commonwealth* v. *White,* 374 Mass. 132, 138 (1977), aff'd, 439 U.S. 280 (1978). See also *Commonwealth* v. *Pennellatore,* 392 Mass. 382, 387 (1984).

At the voir dire, the defendant offered no evidence that he was particularly susceptible to police pressure. There was no evidence that the defendant was affected by drugs or alcohol during the time he spoke to Sergeant Murphy. See *Commonwealth* v. *Tavares, supra* at 145; *Commonwealth* v. *Wilborne,* 382 Mass. 241, 253-254 (1981). Nor was there evidence that the defendant was not sufficiently intelligent or educated to waive his rights or voluntarily make a statement. Furthermore, the court found that the defendant had prior experience with arrest procedures, including knowledge of his Miranda rights and that there was no evidence that the statement was the product of any deception, duress or coercion exercised by the police officers taking the statement.

The defendant's assertion that he was confused when he gave his statement to Sergeant Murphy was rejected by the trial judge when she found that the defendant was only confused about how he had come to be arrested, and not about his rights. That finding was also supported by the record.

We think the judge's ruling admitting the defendant's statement was correct and amply supported by the evidence.

2. The defendant next argues that certain comments by the prosecutor during closing argument were so prejudicial that the curative instructions given by the judge were insufficient to cure the ill. During the closing argument, the prosecutor referred to the defendant as a "street-smart young man" and not a child. The prosecutor also told the jury that the defendant had been advised that if he wanted an attorney the police would bring him one. The trial judge sustained the defendant's objection on the basis that these statements were not supported by the evidence and agreed to give the jury a curative instruction.

Assuming that the defendant's objection was properly based, we think the judge's curative instructions amply shielded the jury from any possible prejudice.[1] *Commonwealth* v. *Charles,*

---

[1] The trial judge instructed the jury in part: "Your determination of the facts and verdict will be based solely upon the evidence that was admitted into evidence in this particular case . . . .

"Remember that the opening statements and closing arguments of both

397 Mass. 1, 13 (1986). *Commonwealth* v. *Francis*, 391 Mass. 369, 373-374 (1984). Considering the prosecutor's argument as a whole, as we must, *Commonwealth* v. *DeCristoforo*, 360 Mass. 531, 537 (1971), habeas corpus denied sub nom. *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 645 (1974), the defendant has failed to demonstrate that the argument had a sufficiently prejudicial effect on the jury to merit reversal. See *Commonwealth* v. *Francis, supra.*

The comments of the prosecutor referred to by the defendant fail to approach the level of condemnation achieved by prosecutorial remarks in cases like *Commonwealth* v. *Shelley*, 374 Mass. 466, 470 (1978) (references to expert witnesses as "mercenary soldiers" and "prostitutes" impermissibly struck at the defendant's sole defense) and *Commonwealth* v. *Burke*, 373 Mass. 569, 574 (1977) (prosecutor impermissibly attacked defendant's character saying, "You have . . . to decide whether or not someone like Mr. Burke is going to go out on the streets again"). Moreover, the defendant's failure to request additional instructions suggests that his objection was resolved to his satisfaction. *Commonwealth* v. *Grammo*, 8 Mass. App. Ct. 447, 457 (1979).

3. The defendant's final contention is that the judge's charge improperly limited the situation in which the jury could return

---

attorneys are not evidence. And insofar as the attorneys have referred to any particular evidence in the closing arguments, I hereby instruct you that it is your recollection and interpretation of the evidence that controls and governs in this case, and not what the attorneys may have said about it and not what I may say about the evidence as I continue to instruct you in the course of these instructions.

"Remember that the opening statements, as well as the closing arguments, and any reference that was made by the attorneys in the course of their arguments is not evidence. The functions of lawyers, as you well know by now — although this is perhaps your first case that you have sat on — is to point out those things that are most significant or most helpful to their side of the case and, in so doing, to call your attention to certain facts or inferences that might otherwise have escaped your notice.

"In the final analysis, however, it is your own recollection and interpretation of the evidence that controls and governs in this case. What the lawyers say is not binding upon you and not evidence, ladies and gentlemen."

a verdict of murder in the second degree. At the outset of the jury charge, the judge instructed the jury that it was their function to determine the degree of murder. During the instruction related to felony-murder, the judge noted, "A killing, whether intentional or accidental, committed in the perpetration of the crime of armed robbery . . . is murder in the first degree." The judge then told the jury again that under G. L. c. 265, § 1, the degree of murder "shall be found by you as a jury." The judge also instructed the jury on the circumstances under which they could return a verdict of guilty of murder in the second degree, and that, if they found that the Commonwealth had failed to prove murder in the first degree, they must consider whether the Commonwealth has proved murder in the second degree. The judge further instructed the jury that it was their duty as jurors to return a verdict of guilty of the highest crime proved against the defendant, and that "[i]f you find the Commonwealth has proved beyond a reasonable doubt murder in the first degree . . . then the Commonwealth is entitled to a verdict of guilty with respect to proof beyond a reasonable doubt of murder in the first-degree indictment." The defendant objected to the charge on the basis that it limited the jury's consideration of second degree murder to situations where the jury finds that the Commonwealth has not met its burden with respect to first degree murder.

Where, as here, the judge instructed the jury that it was for them to determine the degree of murder, and that they could return a verdict of murder in the second degree, there was no error. *Commonwealth* v. *Johnson, ante* 14 (1987). Cf. *Commonwealth* v. *Brown,* 392 Mass. 632, 645 (1984) ("G. L. c. 265, § 1, requires a trial judge to instruct on murder in the first and second degrees if there is evidence of murder in the first degree, even though there appears to be no hypothesis in the evidence to support a verdict of murder in the second degree"). The jury found the defendant guilty of armed robbery. "Where a jury reach a determination that the statutory 'circumstance' (in this case armed robbery-murder) has been met, they should return a verdict of murder in the first degree." *Commonwealth* v. *Dickerson,* 372 Mass. 783, 797 (1977)

(parenthetical phrase in the original). "[If] [t]he judge had instructed the jury that, even if they found that the killing had been committed during the commission of a felony punishable by life imprisonment, they might return a verdict of either murder in the first degree or murder in the second degree[,] [s]uch an instruction [would have been] erroneous." *Commonwealth* v. *Stewart*, 375 Mass. 380, 390 (1978), citing *Commonwealth* v. *Dickerson, supra* at 796-797.

4. We have reviewed the entire record in this case and see no reason to exercise our powers under G. L. c. 278, § 33E. The "extenuating" circumstances urged by the defendant — his age, the fact that he was not the prime mover, did not originally have the gun and showed remorse during his statement — do not reduce murder predicated upon an armed robbery from first degree murder to second. *Commonwealth* v. *Dickerson, supra* at 796.

*Judgments affirmed.*