# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

COMMONWEALTH *vs.* EDWARD PAULDING.

Suffolk. September 9, 2002. - October 24, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & SOSMAN, JJ.

*Practice, Criminal,* Instructions to jury, Capital case, Duplicative convictions. *Homicide. Joint Enterprise. Felony-Murder Rule. Malice. Statute,* Construction. *Due Process of Law,* Elements of criminal offense, Impeachment by prior conviction. *Evidence,* Impeachment of credibility, Prior conviction.

Statement of dictum in *Commonwealth* v. *Dickerson,* 372 Mass. 783, 795-798 (1977), construing the meaning of the provision in G. L. c. 265, § 1, that "[t]he degree of murder shall be found by the jury," when the evidence supported only the view that the defendant was guilty or not guilty of murder in the first degree. [6-7]
Discussion of Justice Quirico's concurring opinion in *Commonwealth* v. *Dickerson,* 372 Mass. 783, 795-798 (1977), criticizing the court's reasoning, and examining the legislative history of the murder statute, G. L. c. 265, § 1, as well as the language of that statute that "[t]he degree of murder shall be found by the jury." [7-9]

This court rejected the reasoning of *Commonwealth* v. *Dickerson,* 372 Mass. 783, 795-798 (1977), and *Commonwealth* v. *Brown,* 392 Mass. 632, 643-645 (1984), insofar as those cases apply to circumstances where the Commonwealth proceeds (and the judge rules that there is evidence) only on the theory of felony-murder in the first degree and there is no evidence of malice that would support a conviction of murder on the theory of deliberately premeditated murder or murder committed with extreme atrocity of cruelty; however, this court stated that where there is evidence of such malice, there would be a basis for the jury to return a verdict of murder in the second degree, and the jury should be instructed on the elements of murder in the second degree. [9-10]

At a murder trial in which the judge instructed the jury that they could find the defendant guilty of second degree murder, but refused to instruct on the elements of that crime, there was a violation of neither the murder statute, G. L. c. 265, § 1, nor the defendant's Federal due process rights, where, absent evidence of malice to support a conviction of murder in the second degree, there could be no showing that the judge's failure to define the elements of murder in the second degree prejudiced the defendant in any way, and where the judge's instructions did not relieve the Commonwealth of proving all of the essential elements to obtain a conviction of murder in the first degree. [10-11]

At a criminal trial, there was no abuse of the judge's discretion in allowing the prosecutor to impeach the defendant by his prior convictions. [11-13]

At a murder trial in which one of three armed robbery convictions was the basis of the defendant's conviction of felony-murder, the defendant was entitled to have one of the convictions vacated as duplicative. [13]

INDICTMENTS found and returned in the Superior Court Department on September 19, 1997.

The cases were tried before *Margot Botsford,* J.

*Stephen Hrones* for the defendant.

*Rami M. Vanegas,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant of unlawful possession of a firearm and of felony-murder in the first degree based on his participation in three armed robberies in which one victim was shot and killed.[1] Represented by new counsel on appeal, the defendant argues

---

[1]The defendant was also convicted of three indictments charging armed robbery. The judge sentenced the defendant to life in prison on the murder conviction, and imposed a concurrent sentence of from three to five years on the unlawful possession of a firearm conviction. She placed the armed robbery convictions on file without imposing sentences. On appeal, the defendant does not argue any error in his convictions of armed robbery.

that the judge (1) violated G. L. c. 265, § 1, and his Federal due process rights, when she instructed the jury that they could find him guilty of murder in the second degree, but refused to instruct on the elements of that crime; and (2) abused her discretion in allowing the prosecutor to impeach him by his prior convictions. Resolution of the first point requires reexamination of *Commonwealth* v. *Dickerson*, 372 Mass. 783, 795-798 (1977), in which it was stated, and of *Commonwealth* v. *Brown*, 392 Mass. 632, 643-645 (1984), in which it was later held (and related subsequent cases[2]), that G. L. c. 265, § 1, requires a judge to instruct on murder in the first and second degrees when there is evidence of murder in the first degree, even though no reasonable view of the evidence supports a conviction of murder in the second degree. We now reject the referenced constructions of G. L. c. 265, § 1, in the *Dickerson* and *Brown* cases, and conclude that the circumstances of this case do not warrant reversal of the defendant's murder conviction. We also reject the defendant's second point concerning his impeachment. Finally, we find no reason to exercise our authority under G. L. c. 278, § 33E, to reduce the degree of guilt on the murder conviction or to order a new trial. Accordingly, we affirm the defendant's convictions of murder in the first degree and unlawful possession of a firearm. We vacate, as duplicative, the defendant's conviction on one of the armed robbery charges and order that that indictment be dismissed.

Based on the Commonwealth's evidence, the jury could have found the following facts. At approximately 11 P.M. on August 23, 1996, Wendell Diaz arrived at Dennis Street Park in the Roxbury section of Boston, where he met an acquaintance, Victor Fantauzzi, and two other men, the murder victim and Eliot Flores. The men were sitting on a park bench smoking a "blunt," a cigar containing marijuana. Diaz joined them. Diaz saw the defendant and a second man, later identified as Jose Duarte,

---

[2]Our opinions following *Commonwealth* v. *Dickerson*, 372 Mass. 783, 795-798 (1977), and *Commonwealth* v. *Brown*, 392 Mass. 632, 643-645 (1984), include *Commonwealth* v. *Christian*, 430 Mass. 552, 557-558 (2000); *Commonwealth* v. *Vinnie*, 428 Mass. 161, 179, cert. denied, 525 U.S. 1007 (1998); *Commonwealth* v. *Gaskins*, 419 Mass. 809, 813 (1995); *Commonwealth* v. *Benjamin*, 399 Mass. 220, 225 (1987); and *Commonwealth* v. *Johnson*, 399 Mass. 14, 15 (1987).

ride by on bicycles. Diaz then left the park. As he left, the defendant and Duarte rode by him. The defendant was wearing a sweater with a hood over his head.

After Diaz left the park, the defendant and Duarte approached Fantauzzi, Flores, and the victim. The defendant and Duarte, with their faces covered, rode up to the men. Duarte, who had a hand gun, cocked and pointed it at the men and said, "Run you all shit." Understanding this command to mean that they were to turn over their belongings, Flores handed the defendant a knife and Fantauzzi handed the defendant a chain and a "Walkman." The victim tossed his wallet on the ground toward the defendant. Duarte then asked the defendant repeatedly, "Le tiru?" which Flores and Fantauzzi understood to be similar to the Spanish phrase, "Should I shoot?" Flores, Fantauzzi, and the victim then ran, and a shot was fired. A bullet hit Fantauzzi in the shoulder at the same time the victim fell to the ground. Flores and Fantauzzi continued running, and ran to Fantauzzi's house.

Boston police officers responded to the park. They found the victim lying face down with a gunshot wound to the back of his head. They found a cigar on the bench on which Diaz, Fantauzzi, Flores, and the victim had been sitting. They also found a wallet and set of keys on the ground in front of the bench. The victim died the following day. Subsequently, the defendant was questioned by police and admitted that he had participated in the armed robbery.

The defendant testified as the sole witness for the defense. His testimony was as follows. On August 23, 1996, he and Duarte went to the park to commit a robbery. The defendant knew Duarte had a loaded gun. Duarte told Flores, Fantauzzi, and the victim to "run your shit." After the men handed over their belongings to the defendant, Duarte said "bounce," which meant "run." When the victims ran, the defendant also ran, but in another direction. The defendant then heard a shot. The defendant testified that he did not know the meaning of the phrase "le tiru." The defendant was impeached with a prior assault and battery conviction and convictions on two counts of possession of a class B controlled substance.

1. The challenged jury instruction issue arose in the following manner. The Commonwealth submitted the case to the jury

solely on the theory that, as a joint venturer, the defendant committed felony-murder in the first degree, the predicate felony being one of the armed robberies. In her main charge, the judge instructed fully and correctly on joint venture, and the elements of armed robbery and felony-murder in the first degree. Before instructing the jury on felony-murder in the first degree, the judge advised the jury of the provisions of G. L. c. 265, § 1, which reads as follows:

> "Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree. Petit treason shall be prosecuted and punished as murder. The degree of murder shall be found by the jury."

The judge then clarified for the jury that the only theory of murder before them was felony-murder in the first degree. After defining felony-murder in the first degree, the judge instructed the jury as follows:

> "I told you that the statute [G. L. c. 265, § 1] provides that the degree of murder is always up to the jury and I've defined for you what felony-murder is. If you find the Commonwealth has proved all of the elements that I've told you that make up the crime of felony-murder in the first degree, you would find him guilty of that crime and you are, indeed, obligated to find a defendant guilty of the highest degree of crime that is proved beyond a reasonable doubt. But in the end the degree of murder, whether it is first degree or second degree is up to you as the jury. . . . And you will have with you on the verdict slip [with respect to the murder indictment the] options of finding the defendant not guilty of felony-murder, guilty of felony-murder in the first degree, or guilty of murder in the second degree and that's going to be up to you."

During deliberations, the jury asked, "What conditions have to be met to convict a person of murder in the second degree?" The judge answered the jury's inquiry by reinstructing on the elements of felony-murder in the first degree and then stating:

"I did explain to you that under our murder statute it specifically provides that the degree of murder, whether it is first degree murder or second degree murder, is up to the jury. So you, as a jury, if you find that there was — that the Commonwealth has proved there was an unlawful killing of [the victim], and that the elements of felony-murder have been proved, in the end, it is up to you whether to find the defendant guilty of first degree murder or second degree murder.

"And so that option of second degree murder is there because the statute vests in the jury the right to determine the degree of murder. But I cannot explain to you any more factors or conditions on that."

The defendant's trial counsel made timely and specific objections to the judge's failure to define the elements of murder in the second degree by instructing the jury on the three prongs of malice that could warrant the return of a verdict of murder in the second degree. The defendant's appellate counsel argues that the language in G. L. c. 265, § 1, stating that it is for the jury to decide the degree of murder, as construed in *Commonwealth* v. *Dickerson, supra,* and *Commonwealth* v. *Brown, supra,* required the judge to define the elements of murder in the second degree in the traditional sense, even though no hypothesis in the evidence in this case would support the instruction. The defendant's appellate counsel concludes that a new trial is necessary because the judge's instruction violated both G. L. c. 265, § 1, and the defendant's Federal due process rights. The case thus squarely presents the issue whether the discussion in the *Dickerson* case, and the holding in the *Brown* case (based on *Dickerson*), provide a correct construction of the meaning of the provision in G. L. c. 265, § 1, that "[t]he degree of murder shall be found by the jury," when, as here, the evidence supports *only* the view that the defendant is guilty or not guilty of felony-murder in the first degree.

(a) In the *Dickerson* case, the defendant unsuccessfully appealed from his convictions of murder in the first degree, armed robbery, and unlawfully carrying a handgun on his person. *Commonwealth* v. *Dickerson, supra* at 784-785. "[T]he only theory advanced by the Commonwealth to support a conviction

of murder in the first degree was that of felony murder." *Id.* at
795. The judge instructed the jury that they had the option of
returning one of three verdicts on the murder charge, not guilty,
guilty of murder in the first degree, or guilty of murder in the
second degree. *Id.* Chief Justice Hennessey, writing for the
court, explained in dictum:

> "The judge, in our view, was correct in submitting
> verdicts of murder in both the first and second degree for
> the jury's consideration, even though it could be argued
> that the evidence would support only one of two verdicts:
> either not guilty or guilty of murder in the first degree. In
> instructing as to murder in the second degree, the judge
> specifically, and correctly, relied on the statutory language
> in c. 265, § 1, that the degree of murder is for the jury to
> determine."

*Id.* at 795-796. This dictum was later adopted in the *Brown*
case. *Commonwealth* v. *Brown, supra* at 645 (noting that
interpretation of G. L. c. 265, § 1, in the *Dickerson* case
"comports with the clear statutory language," and holding that
"G. L. c. 265, § 1, requires a trial judge to instruct on murder
in the first and second degrees if there is evidence of murder in
the first degree, even though there appears to be no hypothesis
in the evidence to support a verdict of murder in the second
degree").

(b) While a majority of the Justices agreed with Chief Justice
Hennessey's statement in the *Dickerson* case, there were two
concurring opinions. Justice Braucher wrote a concurring
opinion joined by Justice Kaplan. Justice Braucher opined that
"the jury could properly return a verdict of guilty of murder in
the second degree even though they found that the murder was
committed in the course of an armed robbery." *Commonwealth*
v. *Dickerson, supra* at 813 (Braucher, J., concurring). He
reasoned that the jury had what he characterized as a "dispens-
ing power," because the Legislature, under G. L. c. 265, § 1,
considers murder as one type of crime with its punishment
more or less severe depending on certain aggravating
circumstances. *Id.*

Justice Quirico authored the other concurring opinion. *Com-
monwealth* v. *Dickerson, supra* at 798 (Quirico, J., concurring).

He severely criticized the court's reasoning, and exhaustively examined the legislative history of the murder statute, G. L. c. 265, § 1, as well as the specific language with which we are concerned. *Id.* at 802-812 (Quirico, J., concurring). Because of the depth of Justice Quirico's examination of the issue, and what we find to be the persuasiveness of his reasoning, we have reproduced a complete copy of his opinion in the Appendix. As a brief summary, what emerges from his concurring opinion are the following significant points. Murder, by statute, originally was divided into degrees "largely to mitigate the harshness of the common law rule imposing a mandatory death penalty on all murderers." *Id.* at 803 & n.5 (Quirico, J., concurring). There had been concern that juries resisted convicting of murder because of the mandatory death penalty. *Id.* at 804 n.6 (Quirico, J., concurring). Thus, "[b]y delineating those murders for which death was considered proper, the statute would forestall the jury from taking the law into their own hands by refusing to convict of a capital offense." *Id.* at 805 (Quirico, J., concurring). At the same time the Legislature divided murder into degrees, it also, for the first time, authorized the jury to determine the degree of murder. *Id.* at 804 (Quirico, J., concurring). "Far from authorizing jury discretion to choose a verdict of murder in the second degree when the facts warranted murder in the first degree," the language authorizing the jury to determine the degree of murder "was intended to oblige the jury to find facts within legislative categories." *Id.* at 805.

Justice Quirico also examined Massachusetts case law interpreting G. L. c. 265, § 1, concluding that "we have never held that by virtue of St. 1858, c. 154, now G. L. c. 265, § 1, the jury have 'untrammeled discretion' to return a verdict of guilty of murder either in the first degree or in the second degree against a defendant who is found to have committed murder, and more specifically in a case involving a defendant found to have committed acts which constitute murder in the first degree as defined in the statute." *Commonwealth* v. *Dickerson, supra* at 808-809 (Quirico, J., concurring). He further noted that "[i]n other jurisdictions where the jury determine the degree of murder, and felony murder is murder in the first degree, there is substantial authority that no instruction on murder in the second

degree is warranted for a felony murder where there is no factual basis for such an instruction." *Id.* at 810 (Quirico, J., concurring). See *Commonwealth* v. *Brown, supra* at 644 n.7 (noting "[t]he majority of jurisdictions hold that a judge is not required to instruct on murder in the second degree if there is no evidential support"). Justice Quirico concluded:

> "It is my conclusion that G. L. c. 265, § 1, does not exempt jurors in a trial on an indictment charging murder in the first degree from the basic rules governing the distinctly separate roles of the judge and the jury in all other criminal trials. It does not endow them with any power to exercise clemency. It does not give them the right to return a verdict contrary to the facts or the law of the case. It does not authorize them to contrive a verdict designed by them to control the punishment which they think should be imposed on the defendant for his crime. Rather it requires them to return a just verdict on the basis of the facts found by them and the law applicable thereto as stated by the judge, to the end that the judge may impose such penalty as is required or permitted by law."

*Commonwealth* v. *Dickerson, supra* at 812 (Quirico, J., concurring). We now conclude that this statement expresses the correct construction of G. L. c. 265, § 1.[3]

(c) Justice Quirico's concurring opinion in the *Dickerson* case identifies the legal basis for authorizing juries to determine the degree of murder, and forcefully points out the infirmities that beset the prevailing construction of G. L. c. 265, § 1. The statute, as presently interpreted, "creates an unavoidable inconsistency because a jury's obligation to find a defendant guilty of the highest crime proved beyond a reasonable doubt may conflict with the stated power of the jury to decide the degree of murder." *Commonwealth* v. *Gaskins,* 419 Mass. 809,

---

[3]As might be expected, the Model Jury Instructions on Homicide follow the directives in the *Dickerson* and *Brown* cases. Model Jury Instructions on Homicide at 19 (1999). We also note here *Commonwealth* v. *Vinnie,* 428 Mass. 161, 179 (1998), where the court took the occasion, on a collateral issue to the one before us, "to clarify that [G. L. c. 265, § 1,] imposes a duty on the judge to give an instruction on murder in the second degree and that the jury's determination of the degree of murder is not subject to a defendant's waiver."

813 (1995). It enmeshes trial judges in a dilemma by compelling them to give inconsistent jury instructions that interject confusion in a case. The present construction is unfair to the Commonwealth, and potentially gives the defendant an advantage to which he is not entitled, namely, a life sentence, but with the possibility of parole after fifteen years. See G. L. c. 127, § 133A. Further, the construction may invite unjustified compromise verdicts and grants juries powers arguably broader than those granted to us under G. L. c. 278, § 33E, see *Commonwealth* v. *Lattimore*, 396 Mass. 446, 452-453 (1985), because the construction essentially authorizes, in certain circumstances, unfettered jury nullification. Such a legally untenable exercise of power by the jury is not protective of the public's interest.

At their essence, the *Dickerson* and *Brown* cases, as they construe the meaning of the language in G. L. c. 265, § 1, that provides that "[t]he degree of murder shall be found by the jury," conflict directly with a natural reading of the statute. The time has come to abandon an anachronism — an interpretation of G. L. c. 265, § 1, that rests on a doubtful legal foundation, and is at odds with the statute's textual formulation, the purpose of a prosecution of felony-murder in the first degree, and the respective roles of a judge and jury in such a prosecution, the former to explain the law correctly, and the latter to arrive at a verdict based on the actual evidence, not on a legal fiction. We now reject the reasoning of these cases insofar as they apply to circumstances where the Commonwealth proceeds (and the judge rules that there is evidence) only on the theory of felony-murder in the first degree and there is no evidence of malice that would support a conviction of murder on the theory of deliberately premeditated murder or murder committed with extreme atrocity or cruelty. Where, however, there is evidence of such malice, there would be a basis for the jury to return a verdict of murder in the second degree, and the jury should be instructed on the elements of murder in the second degree.[4]

(d) The defendant in this case received an instruction to which

---

[4]Of course, if the evidence supports a verdict of felony-murder in the second degree within the charge of felony-murder in the first degree, that form of murder in the second degree would have to be explained to the jury. Cf.

he was not entitled, but from which he stood potentially to benefit. The jurors were told, essentially, that they could return a verdict of murder in the second degree even if they found that the defendant had committed an unlawful killing during the commission or attempted commission of an armed robbery. See *Commonwealth* v. *Johnson*, 399 Mass. 14, 16 (1987) (instruction "that 'even if [the jury] found that the killing had been committed during the commission of a felony punishable by life imprisonment, they might return a verdict of either murder in the first degree or murder in the second degree' is erroneous"). Even under the prior rule, construing the charge in its entirety, see *Commonwealth* v. *Richardson*, 429 Mass. 182, 185 (1999), the judge's instructions did not preclude the jury from returning a verdict of murder in the second degree. There being no evidence of malice in this case to support a conviction of murder in the second degree, and no evidence of a felony supporting a verdict on all elements of felony-murder in the second degree, the defendant cannot show that the judge's failure to define the elements of murder in the second degree prejudiced him in any way. See *Commonwealth* v. *Cruz*, 430 Mass. 182, 185 (1999). In addition, contrary to the defendant's contention, the judge's instructions did not relieve the prosecution of proving "all of the essential elements to obtain a first-degree conviction." We conclude that there was a violation of neither G. L. c. 265, § 1, nor the defendant's Federal due process rights.

2. Before the defendant testified, the judge conferred, outside the jury's presence, with the prosecutor and the defendant's trial counsel regarding the prosecutor's intention to impeach the defendant, should he testify, with the following prior convictions: (1) possession of a class B substance with intent to distribute (two counts); (2) unarmed robbery; (3) assault by means of a dangerous weapon, a handgun; (4) assault by means of a dangerous weapon, a knife (two counts); and (5) assault and battery. The defendant's trial counsel objected to the admis-

---

*Commonwealth* v. *Christian*, *supra* at 558 (explaining that "[a]n instruction on felony-murder in the second degree is required only when there is a rational basis in the evidence to warrant the instruction"). Also, if the evidence in a case of felony-murder in the first degree supports a finding of malice otherwise sufficient for conviction of murder in the second degree, an instruction on murder in the second degree would be appropriate.

sion of the convictions of assault and battery, and assault by means of a dangerous weapon. The judge ruled that the prosecutor could impeach the defendant with evidence of his prior convictions of drug possession and assault and battery, and she excluded evidence of his remaining prior convictions. Subsequently, the defendant's trial counsel chose to introduce the defendant's prior drug possession and assault and battery convictions at the end of his direct examination. We reject the defendant's argument that the judge's failure to exclude these prior convictions constitutes reversible error.

"The use of evidence of prior criminal convictions to impeach the credibility of a witness, including the defendant, is specifically authorized by G. L. c. 233, § 21, and does not infringe on the Federal or State constitutional rights of a defendant." *Commonwealth* v. *Fano*, 400 Mass. 296, 301 (1987). The decision whether to admit such evidence involves an exercise of discretion of the judge, who must "balance the danger of unfair prejudice which can result from the admission of evidence of prior convictions against the probative value of the evidence for the purpose of impeachment." *Commonwealth* v. *Leftwich*, 430 Mass. 865, 869 (2000). "Generally, in order for the prejudicial effect to outweigh the probative value of prior conviction evidence, the 'prior conviction must be *substantially similar* to the charged offense.' " *Id.*, quoting *Commonwealth* v. *Drumgold*, 423 Mass. 230, 250 (1996).

The judge did not abuse her discretion. See *Commonwealth* v. *Maguire*, 392 Mass. 466, 470 (1984). The judge engaged in the required balancing test, and she excluded several of the defendant's prior convictions. Her discretion was not limited to prior convictions solely involving honesty. See *Commonwealth* v. *Walker*, 401 Mass. 338, 346 (1987). The judge twice gave appropriate limiting instructions concerning the jury's use of the evidence, once after the defendant admitted during his direct examination that he had previously been convicted of the offenses, and once during her closing remarks to the jury. See *Commonwealth* v. *Maguire, supra.* In addition, the prosecutor made reference only to the prior convictions of drug possession in his cross-examination of the defendant, making no mention of the prior assault and battery conviction, and, in his closing

argument, the prosecutor made no reference to the defendant's prior convictions. See *id.* Finally, the conduct implicitly involved in the prior conviction of assault and battery does not appear to be substantially similar to felony-murder having the predicate felony of armed robbery. The matter was more than appropriately handled.

3. We see no reason under G. L. c. 278, § 33E, to reduce the verdict of the jury on the murder charge or to order a new trial.

4. One of the armed robbery convictions was the basis of the felony-murder conviction. See *Commonwealth* v. *Gunter*, 427 Mass. 259, 275 n.17 (1998). The defendant is entitled to have at least one of these convictions of armed robbery dismissed as duplicative. See *id.* at 276. We think logically the one that should be dismissed is the armed robbery of the murder victim, the conviction on indictment no. 97-11430-02. We therefore vacate this conviction as duplicative. As previously mentioned, see note 1, *supra*, the defendant does not argue any error with respect to his armed robbery convictions.

5. We affirm the defendant's convictions of murder in the first degree and unlawful possession of a firearm. The defendant's armed·robbery conviction on indictment no. 97-11430-02 is vacated, and that armed robbery indictment is to be dismissed.

*So ordered.*

APPENDIX.

798                                                                      372 Mass. 783

Commonwealth *v.* Dickerson.

QUIRICO, J. (concurring). I concur in the judgment of the court affirming jury verdicts of guilty of murder in the first degree, armed robbery, and unlawfully carrying a handgun. I join in all but part 3 of the court's opinion.

At issue are the instructions a trial judge must give where the Commonwealth seeks to prove a felony murder, "[m]urder . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life." G. L. c. 265, § 1. See *Commonwealth* v. *Balliro,* 349 Mass. 505, 512 (1965). By G. L. c. 265 § 1, such a murder is "murder in the first degree." The statute further provides that "[t]he degree of murder shall be found by the jury."

The Commonwealth submitted sufficient evidence to permit the jury to infer the commission of a murder in the course of an armed robbery. The trial judge instructed the jury on the two degrees of murder and then enumerated factors which he said the jury might consider in decid-

Commonwealth *v.* Paulding.

372 Mass. 783                                                          799

Commonwealth *v.* Dickerson.

ing whether to return a verdict of murder in the first or second degree.[1]

[1]"Now, the law goes on to say this: Murder which does not appear to be in the first degree is murder in the second degree.

"So that you have two classifications of murder. We call it murder one and murder two. First–degree murder, second–degree murder.

"Then the law goes on to say: The degree of murder shall be found by the jury, and you are the absolute boss on that.

"Now, in reading this definition from the law, without the addition of that last sentence, you would conclude, and intelligently, that if you are satisfied beyond a reasonable doubt that this killing was committed by this defendant in the course of an armed robbery, your only verdict could be murder in the first degree. But, strangely enough, that isn't so, even though this murder may have been committed in the course of an armed robbery, it is still up to the jury to determine the degree of murder.

"A jury may return murder in the second degree, even though it's what we call a felony murder. That's what our Supreme Judicial Court has said. That's the highest court in the Commonwealth, who writes all of these decisions in the books here.

"Well, the next sensible question to ask is—If it's a felony murder, what determines the jury to say murder in the first degree rather than murder in the second degree, and vice versa? Well, our Supreme Judicial Court has said that the degree of murder may be found by the jury, depending upon the circumstances as developed in the trial, aggravating or extenuating, I assume. But in no decision that I know has our Supreme Judicial Court gone beyond that to attempt to assist the trial court in instructing the jury or for the jury to have some guidelines as to what sort of circumstances developed at the trial that might make it murder one or murder two. And so that issue really ultimately is left to the good conscience and good judgment of the jury, I assume.

"Perhaps I can assist on my own in this respect: It may well be that a jury might consider, as an extenuating or an aggravating circumstance, the age of the perpetrator, whether or not the perpetrator of a crime was a half frightened teenager full of bravado or whether or not he was a mature man. A jury might or might not—I don't know—might or might not consider that a circumstance that might enter into a circumstance whether or not it would be murder first or murder second.

"It may be possible that a jury would consider differing circumstances, where a robbery was going off smoothly with no confusion and a killing occurred. It might be different in a confused situation where a victim fought back vigorously and there was a struggle and pandemonium reigned, so to speak. A jury might or might not consider those differently.

"If a killing occurred, so to speak, in cold blood, where it would seem to the jury where it was unnecessary for the perpetration of the crime of armed robbery, the jury might or might not consider those circumstances as relevant in determining whether or not a man in a felony murder should be found guilty of first–degree murder or second–degree

800                                                              372 Mass. 783

Commonwealth *v.* Dickerson.

These instructions were erroneous both on the issue of the jury's function in determining the degree of murder in a felony murder case and on the issue of the factors which the jury may consider in arriving at their verdict. The trial judge's instruction, apparently approved by Justice Braucher, that "strangely enough, . . . even though this murder may have been committed in the course of an armed robbery, it is still up to the jury to determine the degree of murder," is particularly strange because I believe it is erroneous.

The jury must be instructed that if they find that a defendant has committed a (1) murder (2) in the commission or attempted commission of (3) a crime punishable by death or life imprisonment, it is then their duty to find the defendant guilty of murder in the first degree. These factors, not the age of the perpetrator or the confusion surrounding the crime, determine the degree of a defendant's guilt under G. L. c. 265, § 1. Because this question may recur, and because of some doubts in my mind whether the court's opinion is sufficiently clear and emphatic, I express my views in this separate concurrence.

1. *The jury's function.* Since the landmark cases of *Commonwealth* v. *Porter*, 10 Met. 263 (1845), and *Commonwealth* v. *Anthes*, 5 Gray 185 (1855), it has been the responsibility of a judge presiding at a trial by jury in a criminal case to decide all questions of law which arise during the trial and to instruct the jury fully and clearly on the rules of law by which they are to be governed in deliberating on their verdict. It is the responsibility of the jury to find the facts on the basis of the evidence, to apply to those facts the applicable rules as stated by the judge in his instructions, and to return a verdict accordingly.[2]

---

murder. That is about as much assistance as I can give you on that point.

"I emphasize once again that it really, it really rests in the consciences and the good judgment of the jurors."

[2]The evolution of this allocation of responsibility is traced in Howe, Juries as Judges of Criminal Law, 52 Harv. L. Rev. (1939); Note,

372 Mass. 783                                                                    801
Commonwealth *v.* Dickerson.

The propriety of these instructions does not involve a factual question. The jury were told that they could return a verdict of murder in the second degree even if they determined that there had been (1) a murder (2) in the commission or attempted commission of (3) a crime punishable by death or life imprisonment. These are the elements of felony murder — murder in the first degree under G. L. c. 265, § 1.

The presence of these statutory elements are thorny issues of fact for the jury. The jury must find the causal connection between the felony and the homicide required by the statutory language of "committed . . . in the commission or attempted commission." G. L. c. 265, § 1. See *Commonwealth v. Devereaux*, 256 Mass. 387, 391–393 (1926). The jury must further find that the foundation felony is one punishable by death or life imprisonment. The jury's belief forms the factual predicate for a verdict of murder in the first degree. When, for example, the jury do not believe that the felony is one punishable by death or life imprisonment — they may believe in a given case that the felony was breaking and entering rather than armed robbery[3] — then murder in the second degree is appropriate. *Commonwealth* v. *Rego*, 360 Mass. 385, 395–

The Changing Role of the Jury in the Nineteenth Century, 74 Yale L.J. 170 (1964); Kadish & Kadish, On Justified Rule Departures by Officials, an Exploration of Otherwise Patterned Official Roles: The Criminal Jury, 59 Cal. L. Rev. 905 (1971).

*Sparf & Hansen* v. *United States*, 156 U.S. 51 (1895), determined an analogous result for Federal courts. For recent cases on the issue whether the judge should instruct the jury whether they have any duty to follow the judge's instructions on the law, see *United States* v. *Moylan*, 417 F.2d 1002, 1005 (4th Cir.), cert. denied, 397 U.S. 910 (1969); *United States* v. *Boardman*, 419 F.2d 110, 116 (1st Cir. 1969), cert. denied, 397 U.S. 991 (1970); *United States* v. *Simpson*, 460 F.2d 515, 518 (9th Cir. 1972); *United States* v. *Dellinger*, 472 F.2d 340, 408 (7th Cir. 1972), cert. denied, 410 U.S. 970 (1973); *United States* v. *Dougherty*, 473 F.2d 1113, 1130–1137 (D.C. Cir. 1972) (excellent extended discussion by Levanthal, J.); Scheflin, Jury Nullification: The Right to Say No, 45 S. Cal L. Rev. 168 (1972).

[3]Breaking and entering is not a crime punishable by death or life imprisonment, whereas armed robbery is so punishable. See G. L. c. 265, § 17, and G. L. c. 266, § 16.

*Commonwealth v. Dickerson.*

396 (1971). *Commonwealth* v. *White,* 353 Mass. 409, 425–426 (1967), cert. denied, 391 U.S. 968 (1968).

Yet in this case the judge instructed the jury that they might find that the defendant committed a murder in the commission of an armed robbery — the facts necessary for murder in the first degree under G. L. c. 265, § 1 — and nonetheless return a verdict of murder in the second degree. This instruction purported to grant to the jury the express right to determine the murder to be in the second degree in spite of the facts they might have determined. Such an instruction trenches on our long–established, consistently applied, and zealously guarded line of demarcation between the respective roles, functions, and responsibilities of the judge and of the jury in the trial of a criminal case.

2. *History of the statute.* Following the definitions of the two degrees of murder,[4] G. L. c. 265, § 1, provides that "[t]he degree of murder shall be found by the jury." In my view, this language must be read in the context of a statute which succinctly distinguishes the degrees of murder. I take this language to mean that the jury shall find the degree of murder by deliberating on the facts, applying the judge's instructions on the law to those facts, and thereby determining which of the two degrees is appropriate. I do not believe this language permits a judge to instruct the jury that they may find all of the facts constituting murder in the first degree, and yet find the defendant guilty of murder in the second degree. Neither the language, nor the history of the statute in which it is contained, nor any decision of this court supports a subversion of the trial judge's exclusive role, vis–à–vis the jury, "to adjudicate finally, upon the whole question of law." *Commonwealth* v. *Anthes,* 5 Gray 185, 193 (1855). Nor is there any basis for encouraging the jury to usurp the

---

[4]"Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree."

372 Mass. 783                                                            803

Commonwealth *v.* Dickerson.

power of the judge and thereby produce a verdict contrary to that required by the law and the facts.

By St. 1858, c. 154, the crime of murder was divided into two degrees. Section 3 of that statute introduced the language that "[t]he degree of murder is to be found by the jury." Massachusetts was not the first State to enact a statute creating degrees of murder which were to be found by the jury. Pennsylvania had adopted such a scheme in 1794, which numerous other States followed. By 1794 Pa. Laws c. 1766, § 2, "the jury, before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree." See Keedy, History of the Pennsylvania Statute Creating Degrees of Murder, 97 U. Pa. L. Rev. 759, 772–773 (1949); Wechsler & Michael, A Rationale of the Law of Homicide: I, 37 Colum. L. Rev. 701, 702–727 (1937). New Hampshire enacted such a statute in 1837 (1836 N.H. Laws c. 273), which appears to have been a model for this Commonwealth.

The legislative documents that precede the enactment of St. 1858, c. 154, suggest that murder was divided into degrees largely to mitigate the harshness of the common law rule imposing a mandatory death penalty on all murderers.[5] An address by Governor George N. Briggs to the

---

[5]By Res. 1837, c. 30, Commissioners were appointed to "reduce so much of the Common Law of Massachusetts, as relates to crimes and punishments and the incidents thereof, to a written and systematic Code." The report of these Commissioners, filed on January 27, 1844, proposed a comprehensive penal code which divided murder into degrees. Report of the Penal Code of Mass., Homicide, at 38 (1844). It also provided that "[t]he degree of murder or of manslaughter is to be found by the jury." An explanatory footnote stated that "[t]he object in making different degrees of murder is to make a distinction in punishment making only the first degree punishable with death." *Id.* at 4 n.(c). No footnote explained the proposed function of the jury.

The report (*id.* at 6 n.[c] ) relied primarily on the law of New Hampshire (1836 N.H. Laws c. 273), but referred also to the laws of Pennsylvania, Maryland, Virginia, Ohio, and Missouri.

In F. Wharton, Treatise on the Law of Homicide 354–358 (1855), it is said that by 1855, Pennsylvania, Maine, New Hampshire, Connecticut, New Jersey, and Tennessee divided murder into degrees and re-

804                                                                    372 Mass. 783

Commonwealth v. Dickerson.

Legislature in 1846 (1846 Senate Doc. No. 2) and the report of a Joint Special Committee of the Legislature (1846 Senate Doc. No. 58) display concern about the difficulty in obtaining a conviction when the jury must choose between a verdict of guilty of murder, punishable by death, and a verdict of not guilty. There is no indication of any intention to grant to the jury a discretion to decide the degree of murder regardless of the facts.

It was not until 1858 that the Legislature by St. 1858, c. 154, §§ 1, 2, established the two degrees of murder, and by § 3 provided that "[t]he degree of murder is to be found by the jury."[6] While the report of the Joint Special Committee (1846 Senate Doc. No. 58) did not specifically recommend the language quoted above from St. 1858, c. 154, § 3, it did note that New Hampshire had enacted a statute on January 13, 1837, establishing two degrees of murder and further noted that by that statute "[t]he jury are to find the degree by their verdict."

The creation of two degrees of murder was thus part of a desire to limit and restrict the mandatory death sentence by isolating certain murders appropriately

quired the jury to determine the degree. The penal code was not enacted by the Legislature. L.W. Levy, The Law of the Commonwealth and Chief Justice Shaw 200–201 (1957).

[6] One writer notes that by this action the Legislature "voted to divide the crime of murder into two degrees, following the practice in some of the other states and the recommendation of a joint special committee in 1846, thus permitting a jury some latitude if it thought the accused had not committed a crime warranting death." E. Powers, Crime and Punishment in Early Massachusetts 1620–1692, 317 (1966).

Another writer suggests the following reason for the timing of St. 1858, c. 154: "In 1857 a female charged with murdering her husband by arsenic poisoning was tried in Plymouth County. The evidence against her was overwhelming, but the jury resisted conviction and was unable to reach a verdict. Months later, in 1858, the state legislature enacted the so-called 'murder statute' for the first time, distinguishing murder in the first degree and murder in the second degree, defining both and requiring a mandatory sentence of life imprisonment and not the death penalty for persons convicted of murder in the second degree. It had been argued to the legislature that regardless of the evidence, it was impossible to convict female defendants in murder cases because of the mandatory death penalty." R. Sullivan, Goodbye Lizzie Borden, 193 (1974).

punishable by death. See *McGautha* v. *California*, 402 U.S. 183, 198–199 (1971); Davis, The Movement to Abolish Capital Punishment in America, 1787–1861, 63 Am. Hist. Rev. 23 (1957). By delineating those murders for which death was considered proper, the statute would forestall the jury from taking the law into their own hands by refusing to convict of a capital offense. See H. Kalven and H. Zeisel, The American Jury 306–312 (1966). Far from authorizing jury discretion to choose a verdict of murder in the second degree when the facts warranted murder in the first degree, St. 1858, c. 154, § 3, was intended to oblige the jury to find facts within legislative categories.

3. *Massachusetts case law.* I am aware of no decision in which the subject matter of this concurrence has ever been put in issue or decided by this court. I respectfully suggest that the two cases cited by Justice Braucher on this subject, viz., *Commonwealth* v. *Chase*, 350 Mass. 738, 744, cert. denied, 385 U.S. 906 (1966), and *Commonwealth* v. *DiStasio*, 298 Mass. 562, 564, cert. denied, 302 U.S. 683, 759 (1937), did not involve or decide this point. The *Chase* case involved an indictment charging the defendant with murder in the second degree. At the trial the evidence was that the murder was committed in the commission or attempted commission of an armed robbery. The defendant contended that he could not be convicted of murder in the second degree on evidence proving the crime of murder in the first degree. Thus the issue before the court was whether proof of murder in the first degree precluded the defendant's conviction for the crime of murder in the second degree charged against him, and whether the defendant was therefore entitled to a directed verdict of not guilty. We held that he was not. Clearly the *Chase* case did not in any way involve the issue whether a jury at the trial of an indictment charging murder in the first degree, after finding that the murder was committed in the commission or attempted commission of an armed robbery, a crime punishable with imprisonment for life, have the right to find the defendant guilty of murder in the second degree. When this court said in the *Chase* case, *supra* at

Commonwealth *v*. Paulding.

806                                                                    372 Mass. 783
Commonwealth *v*. Dickerson.

744, that "we are not persuaded that the language in [G. L.] c. 265, § 1, was intended to limit the operation of the felony–murder rule to first degree murder," it did so to emphasize the fact that on an indictment charging murder in the second degree the jury could convict the defendant of that crime although the crime actually committed was murder in the first degree. That does not warrant a conclusion that the court meant to say, or was saying, that on a charge of murder in the first degree the jury could properly find the defendant guilty of murder in the second degree notwithstanding proof of the greater degree.

The *Chase* decision is but one of a number of cases, including the *DiStasio* decision, *supra*, to the effect that the "murder statute," St. 1858, c. 154, now G. L. c. 265, § 1, "does not create two separate and distinct crimes, but that the Legislature 'considers murder as one kind or species of crime, the punishment of which may be more or less severe according to certain aggravating circumstances, which may appear on the trial.' " *Commonwealth* v. *Chase*, *supra* at 744.

In the early case of *Commonwealth* v. *Gardner*, 11 Gray 438 (1858), the court held that the statute did not establish any new crimes, but only two degrees of the same crime, one of which, murder in the first degree, was punishable with death as formerly, and the other, murder in the second degree, was punishable by imprisonment for life, the difference in punishment being due to the difference between the two degrees of the crime as defined by the statute. In speaking on the same statute, this court said in *Commonwealth* v. *Desmarteau*, 16 Gray 1, 15 (1860): "The statute provision has only reference to the extent of the punishment, *and for that purpose the jury are required to find the degree*" (emphasis supplied).

The decision of this court in *Commonwealth* v. *French*, 357 Mass. 356 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972), contains language which has since been cited in *Commonwealth* v. *O'Neal*, 369 Mass. 242, 274 n.1 (1975)

372 Mass. 783                                                              807

Commonwealth *v.* Dickerson.

(*O'Neal II* ) (Hennessey, J., concurring), as supporting the position now taken by Justice Braucher.

In the appendix to the *French* opinion dealing with "[v]arious less significant issues raised by assignments of error" the court said at 405: "A–40. In defining murder, the judge first read to the jury G. L. c. 265, § 1, and defined malice aforethought. He then said that if the jury believed 'the contention of the Commonwealth, that this Deegan murder was planned in advance, it is murder in the first degree.' He made it clear, however, that, if they saw fit to do so, they could return a verdict of murder in the second degree even if 'there [was] a plan in advance to kill Deegan.' He had previously said that 'the jury have the power to decide the degree of murder.' This adequately stated the law."

I do not consider the paragraph "A–40" quoted above from the appendix to the *French* decision to be a holding one way or the other on the subject matter of this concurrence. An examination of the original records in that case reveals that the paragraph represents the disposition of substantially similar assignments of error by most of the defendants in that case to the effect (a) that the trial judge's statement to the jury that if they believed "the testimony of the Commonwealth . . . that this Deegan murder was planned in advance, it is murder in the first degree" was error because it improperly imposed on the jury his own opinion on how they should evaluate the testimony and permitted them to give second–class consideration to the question whether or not the facts amounted to murder in the second degree, and (b) that the trial judge failed to instruct the jury sufficiently on the elements of and distinction between murder in the first degree and murder in the second degree. Neither these assignments of alleged error nor the arguments of the parties raised or referred to the question whether the jury had the power to return a verdict of guilty of murder in the second degree if they found that "this Deegan murder was planned in advance." In view of the limited

808                                                                 372 Mass. 783

Commonwealth *v.* Dickerson.

assignments of error and arguments thereon, it is my opinion that the statement in the decision that "[t]his adequately stated the law" disposed only of the claims that the judge tried to impose his opinion on a factual question on the jury and that he had failed to define and distinguish the two degrees of murder. I attribute nothing more to that statement.

Our decision in *Commonwealth* v. *Corcione*, 364 Mass. 611, 614–615 (1974), includes the following statement: "He [the defendant] also argues that the judge improperly precluded consideration by the jury of a verdict of guilty of second degree murder. G. L. c. 265, § 1. See *Commonwealth* v. *Chase*, 350 Mass. 738 (1966)." However, that question was not considered further because the court said it was reversing the judgments for other reasons.

The concurring opinion of Justice Hennessey, now the Chief Justice, in *O'Neal II*, at 274 n.1, included the following statement: "It can be argued that the law of this Commonwealth is that murder in the second degree must be submitted to the jury as a permissible verdict in every murder case, including rape–murder, regardless of circumstances. . . . [Citations of the *French, Chase, Desmarteau, Gardner*, and *Corcione* cases, all *supra*, and three other cases omitted.] From this it can be further argued that, since second degree murder is not punishable by the death penalty, the jury have unconstitutional untrammeled discretion in a rape–murder to choose between life imprisonment and the death penalty." The concurring opinion containing that suggested argument was not joined by any of the six other Justices who participated in the decision of the *O'Neal II* case. I know of no other decision in which that argument has been passed on by this court.

It is my conclusion, based on a consideration of the various opinions of this court which are cited and discussed above, that we have never held that by virtue of St. 1858, c. 154, now G. L. c. 265, § 1, the jury have "untrammeled discretion" to return a verdict of guilty of murder either in the first degree or in the second degree against a defendant who is found to have committed mur-

der, and more specifically in a case involving a defendant found to have committed acts which constitute murder in the first degree as defined in the statute.

4. *Other jurisdictions.* Having noted earlier in this opinion that our St. 1858, c. 154, was probably patterned after the 1836 N.H. Laws c. 273, which later became Rev. Stat. Ann. § 585:3 (1955), and was ultimately repealed by 1974 N.H. Laws c. 34:12, it may be helpful to examine the effect given to that statute by the Supreme Court of New Hampshire. That statute created two degrees of murder and provided that "[e]very Jury who shall find any person guilty of murder, hereafter committed, shall also find by their verdict, whether it is of the first or second degree."

In *Pierce* v. *State*, 13 N.H. 536 (1843), New Hampshire emphatically rejected the view that juries could determine the law in criminal cases, very much as was done in this Commonwealth by the later decisions in *Commonwealth* v. Porter, 10 Met. 263 (1845), and *Commonwealth* v. *Anthes*, 5 Gray 185 (1855).

In *State* v. *Thorp*, 86 N.H. 501, 504–545 (1934), the court interpreted the statute permitting the jury to determine degrees of murder, and rejected an argument that the defendant was entitled to an instruction regarding murder in the second degree. It said: "The court did not err in refusing to instruct the jury that they might find the defendant guilty of a lower grade of homicide than that of first–degree murder (even assuming the request to so charge had been seasonably made), since there was no evidence from which second–degree murder or manslaughter could reasonably be inferred. . . . The contention that in murder cases the jury should be permitted to exercise leniency without restriction is untenable. 'The proposition that a judge administering justice in criminal cases commits an error . . . by failing to tell a jury that they may . . . find a verdict unwarranted by the evidence . . . would lead to a perversion of justice.' *State* v. *Young*, 67 N.J.L. 233, 234 (1902). Furthermore, since the jury in the present case declined to exercise such leniency as the statute allowed, it is difficult to understand how the de-

Commonwealth *v.* Dickerson.

fendant could possibly have been harmed by the refusal to grant his request, even if legally entitled to the instruction asked for."

In other jurisdictions where the jury determine the degree of murder, and felony murder is murder in the first degree, there is substantial authority that no instruction on murder in the second degree is warranted for a felony murder where there is no factual basis for such an instruction.[7] If no instruction is required, a fortiori the jury would not be expressly instructed that they may find that a murder committed in the course of an armed robbery is murder in the second degree. These precedents are not binding, but I find them persuasive.

5. *Conclusion.* It seems almost incredible to me that for the first time in the 119 years since the enactment of St. 1858, c. 154, now G. L. c. 265, § 1, we should be called on to pass on the question of what a trial judge may or must tell a jury about what factors can be considered in deciding whether a murder is in the first degree or in the second degree. It is my opinion that the reason the question has never come up before is that the answers are

---

[7]*State* v. *Conner,* 241 N.W.2d 447, 461 (Iowa 1976): "Under the only theory of murder submitted to the jury here, defendant could under the evidence only be found guilty of first–degree murder or acquitted. The court did not err in failing to submit second–degree murder." *State* v. *Nasello,* 325 Mo. 442, 459 (1930). *State* v. *Monahan,* 16 N.J. 83, 94, cert. denied, 348 U.S. 889 (1954). *Bandy* v. *State,* 102 Ohio St. 384, 402–403 (1921). *State* v. *Bradshaw,* 101 R.I. 233, 242 (1966). *State* v. *Saccoccio,* 50 R.I. 356, 361 (1929): "Our statute says that the jury may find the degrees of murder and expressly makes murder committed in the course of robbery murder in the first degree. The statute was not intended to leave the determination of the degree of murder in every case to the jury." *Wooden* v. *Commonwealth,* 208 Va. 629, 634–635 (1968).

Contra, *Commonwealth* v. *Meas,* 415 Pa. 41, 45 (1964): "Moreover, in a trial on a murder indictment, the jury has the *exclusive* right to fix the degree of guilt and may not be deprived of this right, even though the only evidence in the case establishes that the killing was committed in the perpetration of a felony: *Commonwealth* v. *Turner,* 367 Pa. 403 . . . (1951)" (emphasis in original).

An exhaustive treatment of these questions may be found in Annots. 21 A.L.R. 603 (1922), 27 A.L.R. 1097 (1923), and 102 A.L.R. 1019 (1936).

written into the statute itself and they have been there since its original enactment. I would read the statute to mean exactly what it says and that is (a) that "[m]urder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree," and (b) that "[m]urder which does not appear to be in the first degree is murder in the second degree." For the meaning of "murder" apart from degrees, I would go to the common law.

I believe that the proper meaning of the concluding sentence of G. L. c. 265, § 1, to the effect that "[t]he degree of murder shall be found by the jury," is that the jury should follow substantially the same procedure which they would follow in any criminal case, particularly one charging a crime in an aggravated form such as assault with a dangerous weapon, assault with intent to murder, or assault with intent to rob. That procedure, in a case involving a charge of murder in the first degree, would involve the following steps: (a) the jury must first find the facts of the case, (b) they must decide whether on the facts found the defendant committed the crime of murder, (c) if he did, they must decide whether the murder comes within any one of the three statutory categories of murder in the first degree, (d) if it does, they must return a verdict of guilty of murder in the first degree, (e) if it does not, they must return a verdict of guilty of murder in the second degree, and (f) in all their deliberations and decisions they must follow and apply the law as given to them by the trial judge on all phases and aspects of the case.

I recognize and concede, of course, that, if jurors thus instructed fail to follow the judge's instructions and, in violation of their duty, find a defendant in such a case guilty of murder in the second degree and the court accepts and records their verdict, it cannot be set aside later. However, the reason the verdict cannot be set aside later is not because the jury had the right to return it but

Commonwealth *v.* Dickerson.

rather because the Commonwealth cannot appeal therefrom. The verdict in such a case is the result of the jurors' exercise of their power[8] to produce such a result and not of the right to do so. The helpless position of the Commonwealth is common to any criminal case, whether murder or some other offense, where jurors having found facts constituting the crime charged nevertheless return a verdict of guilty of a lesser offense included in that charged, or a verdict of not guilty. However, the fact that realistically we must concede that jurors have the power to produce such a result does not require that we must therefore conclude (a) that they have any right to do so, or (b) that the trial judge must inform them of the existence of that power and instruct them on what factors they may or must consider when they are contemplating the return of a verdict other than one required on the facts found by them and the law applicable thereto.

It is my conclusion that G. L. c. 265, § 1, does not exempt jurors in a trial on an indictment charging murder in the first degree from the basic rules governing the distinctly separate roles of the judge and the jury in all other criminal trials. It does not endow them with any power to exercise clemency. It does not give them the right to return a verdict contrary to the facts or the law of the case. It does not authorize them to contrive a verdict designed by them to control the punishment which they think should be imposed on the defendant for his crime. Rather it requires them to return a just verdict on the basis of the facts found by them and the law applicable thereto as stated by the judge, to the end that the judge may impose such penalty as is required or permitted by law.

---

[8]"The judge cannot direct a verdict [of guilty] it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts." *Horning* v. *District of Columbia*, 254 U.S. 135, 138 (1920) (Holmes, J.).