## COMMONWEALTH *vs.* CHARLES E. SIMMONS, JR.

Hampden. October 5, 1993. - February 11, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Homicide. Practice, Criminal*, Voluntariness of statement, Argument by prosecutor, New trial, Disclosure of evidence. *Joint Enterprise. Felony-Murder Rule.*

At a criminal trial, the evidence on voir dire supported the judge's finding that the defendant's statement to police, making a false claim of alibi, was voluntarily made and was not the product of intoxication. [65-66]

The prosecutor's closing argument at a criminal trial presented no substantial risk of a miscarriage of justice and, in the judge's discretion, would have been permissible over timely objection. [66-67]

At a criminal trial, no substantial risk of a miscarriage of justice was occasioned by the judge's failure to instruct the jury that, to find the defendant guilty of first degree felony-murder with armed robbery as the underlying felony, they would have to find beyond a reasonable doubt that the defendant knew his coventurer was armed, in view of the judge's instruction to the jury, in terms more favorable to the defendant than the law required, that for either armed robbery or unarmed robbery to be the underlying felony, they would have to find beyond a reasonable doubt that the defendant acted with conscious disregard for the victim's life. [67-71]

A criminal defendant was not entitled to a new trial on the basis of newly discovered evidence tending merely to impeach the credibility of a witness. [71-72]

A defendant convicted of murder in the first degree was not entitled to a new trial on the ground that the Commonwealth failed to make timely disclosure of a notice of alibi filed on behalf of the codefendant, who had pleaded guilty to the crime before the defendant's trial, where the notice of alibi was not the subject of a specific request and where the likelihood of prejudice to the defendant was remote. [72-74]

INDICTMENT found and returned in the Superior Court Department on September 22, 1987.

The case was tried before *Raymond R. Cross*, J., and a motion for a new trial was heard by him.

A motion for a new trial filed in the Supreme Judicial Court was referred to *Nolan*, J., and was considered by him.

*Donald A. Beaudry* for the defendant.

*Elizabeth Dunphy Farris*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. Following a jury trial, the defendant appeals from a conviction of murder in the first degree, from a denial in the trial court of his motion for a new trial, and from a denial by a single justice of this court of a second motion for a new trial. In the appeal from his conviction, the defendant argues that a false statement in the nature of an alibi that he made to the police when he was arrested for the murder was involuntarily made and therefore the trial judge erred in admitting it in evidence. He also says that the prosecutor impermissibly argued to the jury in his summation that the defendant had a degenerate life-style and was the type of person who would be likely to commit murder. In addition, the defendant argues that the judge's instructions to the jury concerning joint venture felony-murder, with armed robbery as the underlying felony, were prejudicially incomplete because the judge failed to tell the jury that the defendant could be guilty of armed robbery only if he knew that his coventurer was armed at the time of the incident.

The defendant's contention with respect to his first motion for a new trial is that, by denying his motion, the trial judge deprived him of important impeachment evidence that did not become available to him until after the trial. Finally, the defendant argues that, because the Commonwealth's appellate brief in this court disclosed to the defendant for the first time exculpatory evidence that the prosecutor had withheld throughout the trial despite the defendant's request for it, the defendant's motion for a new trial grounded on that conten-

tion should have been allowed by the single justice.[1] After considering the defendant's arguments and the entire record, we affirm the conviction and the denial of the motions for postconviction relief.

There was evidence that, on the morning of August 26, 1987, the body of Harry Holland, Jr., was found floating close to the edge of the Connecticut River near Bondi's Island and the border of West Springfield and Agawam. An autopsy revealed the cause of death to have been strangulation and blunt force trauma to the head. Death was determined to have occurred during the early morning hours of August 26. Items of Holland's clothing were found near a pile of rocks, some of which were bloodstained, a few yards from where the body was found, and drag marks flanked by two sets of footprints led from that spot to the river bank.

There also was evidence that Raymond David, the owner of the Pub Lounge in Springfield, observed the defendant and John Cirillo playing pool together at the lounge after midnight, August 25-26. Susan Rainville, an employee at the lounge, testified that she had ordered the defendant, Cirillo, and Holland to leave the lounge at closing time, 2 A.M. on August 26. She saw the three men leave together.

Holland's truck was recovered after his death on Elmdale Street in West Springfield. Anthony J. Filippone, a resident of 27 Elmdale Street, heard a motor vehicle pull up in front of his house between 2 A.M. and 2:30 A.M. on August 26. He saw two white men get out of Holland's truck. Filippone's general description of the two men, including the color of their hair, matched the appearances of the defendant and Cirillo.

---

[1] The single justice denied the motion for a new trial after the full court had referred it to him for disposition pursuant to G. L. c. 278, § 33E. Frequently, this court will transfer to the trial court a motion for a new trial filed with this court during the pendency of an appeal. However, when the motion does not raise a question of fact or otherwise require the participation of the trial court it is proper for the motion to be disposed of by the single justice after referral by the full court. G. L. c. 278, § 33E.

Cirillo testified at the defendant's trial pursuant to an agreement with the Commonwealth that anticipated Cirillo's pleading guilty to the murder in the second degree of Holland. The agreement required Cirillo to testify truthfully. Cirillo told the jury that in the early morning of August 26, he, the defendant, and Holland left the Pub Lounge in Holland's truck. They drove to Bondi's Island, parked the truck, and ingested cocaine supplied by Holland. After finishing the cocaine the three got out of the truck. At this time, out of earshot of Holland, Cirillo and the defendant planned to rob Holland of the cocaine and money which they believed he had. The three men moved to a clearing by the tree line and engaged in sexual acts. Then the defendant demanded more cocaine from Holland. While Cirillo stood fifteen to twenty feet away, the defendant and Holland began to fight. The defendant repeatedly struck Holland about the head and chest. Meanwhile, Cirillo returned to the truck to look for a weapon. Finding a tire iron in the truck, Cirillo walked up behind Holland while he was still fighting with the defendant and struck him four or five times on the head with the tire iron. Holland fell to the ground and Cirillo struck him once or twice more. During this attack, the defendant moved away from Holland and stood by. Cirillo, and then the defendant, checked Holland's pulse and, not finding any, believed that he was dead. At this point, Cirillo searched Holland's pockets for money or cocaine. The search turned up only pocket change which Cirillo and the defendant left with Holland. The two then dragged Holland's body to the river's edge and placed it in the water. The two men returned to Holland's truck and the defendant drove it to Elmdale Street. They then walked to the bus station and separated, after agreeing to deny any knowledge of the killing. Cirillo denied strangling Holland and testified that he did not see the defendant strangle him.

At approximately 6 A.M. on August 26, West Springfield police Officer Charles Harlow found the defendant sleeping by the side of Riverdale Road in West Springfield. He woke

the defendant who told Harlow he had fallen asleep because he was tired from walking.

The defendant was arrested for murder on September 3, 1987. On being shown the warrant for his arrest the defendant spontaneously volunteered to Trooper John Cauley that he had an alibi. Following a voir dire, Trooper Cauley testified to the jury that the defendant appeared to have been drinking but was "cognizant of what was going on," and "understood what was happening to him." After being transported to the Agawam police station, the defendant told the police that he had been at the Pub Lounge with Gray Chandler on the night of August 25. The defendant was not questioned further at that time because the officers determined that his "belligerent" and "combative" demeanor would make such questioning futile.

Chandler testified that the defendant had not been with him on the night of August 25, but had been with him on the night of August 24 and until midmorning of the 25th. At the trial, the defendant presented a revised account of his whereabouts on the night of August 25 and the early morning of August 26. He said that he had spent the early part of August 25 at his cousin's house and that he went from there to downtown Springfield where he spent the early evening shooting pool at a barroom. According to the defendant's testimony, he left the barroom at about 9:15 P.M. and went by bus to Holyoke to meet Sandra Rogers for a prearranged "dinner date." He got off the bus at the outskirts of Holyoke and walked. At approximately 11 P.M. he stopped at a package store along the way. The defendant reached the vicinity of Rogers's apartment and sat across the street in a park. At about 12:15 A.M., August 26, the defendant saw Rogers at an apartment window and beckoned for her to come down and speak with him. Rogers met the defendant in the park, but would not let him into her apartment. They talked for some time and then Rogers left the defendant in the park. She gave the defendant a jacket and some blankets to fight off the night's chill. After Rogers's departure, the defendant began to walk back toward Springfield and, becoming tired, fell

asleep at the side of the road where he was found by Officer Harlow.

The defendant presented the testimony of John Cuoco, an inmate at the York Street Jail. Cuoco testified that he had overheard a conversation in the jail between Cirillo and another inmate in which Cirillo said that, even though the defendant was not at the scene of the murder, "he [Cirillo] was going to take him down."

We turn now to a discussion of the issues on appeal. The first issue we shall take up is the defendant's assertion that, because he was intoxicated when he told the police that he had been with Gray Chandler on the night of August 25, a claim that Chandler controverted and the defendant abandoned at trial, the statement was involuntary and inadmissible. The error, the defendant says, was prejudicial because it damaged his credibility as a witness and unfairly tended to show his consciousness of guilt. It is true, of course, that if the defendant's statement was involuntary, it was also inadmissible. It is true, too, that the statement was involuntary if it was in large measure a product of intoxication. *Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991). *Commonwealth* v. *Hosey*, 368 Mass. 571, 577-579 (1975).

In *Commonwealth* v. *Blanchette*, 409 Mass. 99, 106 (1991), we said: "When voluntariness is an issue, a judge should conduct a voir dire examination to determine whether the statements are indeed voluntary. . . . If the judge determines that the statements are voluntary, the question should be submitted to the jury so that they may make the final determination. . . . The Commonwealth has the burden of proving the voluntariness of such statements beyond a reasonable doubt." (Citations omitted.) Here, the judge conducted a proper voir dire, and found that, although the defendant may have been somewhat intoxicated when he spoke to the police, his mind was rational and his faculties were under control. He concluded that the statement had been voluntarily given. The judge's finding of voluntariness was supported by the testimony of the police officers that, although the defendant's speech was slightly slurred, the police had no

difficulty understanding him, he walked without difficulty, and he appeared to appreciate the situation he was in. "Although alcohol intoxication is an important factor bearing on the issue of voluntariness, intoxication alone is not sufficient to negate an otherwise voluntary act. *Commonwealth* v. *Lanoue*, 392 Mass. 583, 587 (1984)." *Commonwealth* v. *Parker*, 402 Mass. 333, 341 (1988). The judge's voir dire findings were supported by the evidence. The evidence was properly admitted at the trial.

The next of the defendant's contentions that we address relates to the prosecutor's closing argument. The defendant did not object at trial to the argument nor did he request curative instructions. "In considering issues argued on direct appeal as to which the defendant's appellate rights were not preserved by an objection or in some manner, we apply the standard of G. L. c. 278, § 33E (1990 ed.). We must decide whether there is a substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992).

The relevant portion of the prosecutor's summation was as follows:

> "Now, ladies and gentlemen, you ask yourselves why Cirillo and Simmons are together. And is it odd that these two people should be together? Aren't they the same type of people? Aren't they the same type of people, hang around the block, don't have any money, no steady job? And what do they do, these two people? They do the same thing. They look for people who have money to buy them a drink, and that's the type of life they lead. It's not unusual, ladies and gentlemen, that Cirillo and Simmons met up. It's not unusual that they're playing pool for drinks, and it's not unusual that they avail themselves of someone to buy them drinks, like Harry Holland, and it's not unusual, as Mr. Braese said, that they leave with this guy and get high with him. That's the type of life they had. . . . It's not un-

usual they're together, ladies and gentlemen. Simmons and Cirillo are cut from the same mold."

The defendant's contention is that the prosecutor's argument was, "in essence, that Mr. Cirillo was a degenerate killer, Mr. Simmons [the defendant] and Mr. Cirillo [were] alike," and that therefore the defendant "probably killed Mr. Holland." The thrust of the defendant's argument on appeal is that, in his summation the prosecutor unfairly urged the jury to infer that the defendant, like Cirillo, was a bad man who would be likely to commit murder and, from that, to conclude that he murdered Holland. We agree that such an argument would have been impermissible. However, we do not agree that that was the main thrust of the prosecutor's argument. The theory of the Commonwealth's case was that Cirillo and the defendant were together at the Pub Lounge where they became involved with Holland, and that they left the lounge with Holland and went to a remote place where they killed him in the course of robbing him. The defendant presented evidence that he was not at the lounge or with Cirillo. The gist of the prosecutor's argument was that the Commonwealth was not urging the jury to accept an unlikely story; that the defendant and Cirillo had similar life-styles which were consistent with their having found and joined each other and Holland at the Pub Lounge on the night of August 25, as the Commonwealth's witnesses testified. The prosecutor had a right to argue the evidence and the fair inferences from it in his summation. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978), and cases cited. We are satisfied that, if the defendant had objected to the argument at trial and the judge had nevertheless permitted the argument, the judge would have acted within his discretion in concluding that the relevancy of the argument was not outweighed by unfair prejudice to the defendant. We are satisfied, too, that no substantial likelihood of a miscarriage of justice resulted from the prosecutor's argument.

The next issue focuses on the judge's instructions to the jury concerning joint venture felony-murder. We have said

that a "defendant [cannot] properly be found guilty of . . . joint venture felony-murder with armed robbery as the underlying felony unless, at the close of the Commonwealth's case, the evidence warranted a finding beyond a reasonable doubt that the defendant knew that [the coventurer] had a [weapon]." *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988). The defendant does not argue that the evidence was insufficient for the jury to find that he knew Cirillo was armed. Rather, the defendant argues that the judge instructed the jury, inconsistently with the rationale of *Fickett*, that they could find the defendant guilty of murder in the first degree on a theory of joint venture felony-murder, with armed robbery as the underlying felony, without informing the jury that they could only do so if they found beyond a reasonable doubt that the defendant knew that Cirillo was armed.

The relevant portion of the judge's instructions is as follows:

> "There is . . . a second theory of first degree murder that is being advanced by the Commonwealth, and that is called the felony murder rule. The defendant is charged or alleged to have committed murder in the commission or attempted commission of a crime punishable by imprisonment for life. The statute defining murder allows you to find the defendant guilty of first-degree murder, if you find the Commonwealth has proved beyond a reasonable doubt that the defendant murdered the victim in the commission or attempted commission of a crime punishable by imprisonment for life. Such a crime would be robbery. Robbery is a felony that could be punishable by life imprisonment.
>
> "And robbery is defined as the felonious taking and carrying away of the property of another from his person and against his will by force and violence or by assault and putting in fear with intent to steal. Robbery can be armed or unarmed, and either way, if a person is

guilty of robbery, the maximum penalty can be life imprisonment.

"Thus, the Commonwealth would have to prove beyond a reasonable doubt that the defendant murdered the victim, Harry Holland, in the commission or attempted commission of a crime punishable by imprisonment for life. This principle of law which so defines murder, as I have said, is known as the felony murder rule. The effect of the felony murder rule is to substitute the intent to commit the underlying felony for the malice aforethought required for murder. Thus, the felony murder rule, where applicable, is based on the theory that the intent to commit the underlying felony, that is robbery, the stealing of drugs or money from a person, is equivalent to the malice aforethought necessary for a murder conviction.

"In order to find the defendant guilty of first-degree murder under the felony murder rule, the Commonwealth must prove the following three elements beyond a reasonable doubt: First that there was an unlawful killing; second, that the homicide was committed in the course of a felony or attempted felony, and, as I say, robbery is such a felony; third, that, under the circumstances of this case, the defendant committed the felony or attempted felony with a conscious disregard for human life. To summarize, the felony murder rule enables you, the jury, to find the existence of murder by substituting the attempt to commit this specific felony in this case, that is the Commonwealth claims is robbery, with malice aforethought necessary for the commission of murder. In order to apply the felony murder rule, however, the Commonwealth must have convinced you beyond a reasonable doubt, 1, that a homicide, that is an unlawful killing, was completed; 2, that the homicide was committed in the commission or attempted commission of a felony by the defendant; and 3, that the commission of this felony indicates that there was a

conscious disregard for the risk — of the risk to human life created by the defendant's actions.

"If after considering all the evidence you find the Commonwealth has proven beyond a reasonable doubt each and every one of the three elements that I have just now defined, then the felony murder rule applies, and you must find the defendant guilty of murder. If, however, after your consideration of all the evidence you find that the Commonwealth has not proven any one of those three elements beyond a reasonable doubt, you must find the defendant not guilty of murder, at least under the felony murder principle."

The defendant correctly says that the judge failed to instruct the jury that the defendant could be guilty of armed robbery only if he knew that Cirillo was armed. The defendant did not object to the omission or otherwise preserve his appellate rights at trial, however. Therefore, the question before us is whether, on account of the omission, there is a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. *Commonwealth* v. *Wright, supra* at 681. We conclude that there is no such likelihood because the judge instructed the jury that, in order to find the defendant guilty of murder in the first degree by application of the felony-murder rule with armed or unarmed robbery as the underlying felony, they would have to find beyond a reasonable doubt that the defendant consciously disregarded the risk to Holland's life created by his conduct. The judge correctly told the jury that for them to find the defendant guilty of murder in the first degree on a joint venture felony-murder theory with unarmed robbery as the underlying felony, they would have to find that the defendant consciously disregarded the risk to Holland's life. The judge would have been correct if he also had instructed the jury that, if they were to find armed robbery as the underlying felony and that the defendant knew that Cirillo was armed, they would not need to address the question whether the defendant consciously disregarded the risk to Holland's life because armed robbery in-

herently involves a conscious disregard of the risk to human life. *Commonwealth* v. *Watson*, 388 Mass. 536, 544 (1983). The judge's instruction that armed robbery can be the basis of felony-murder only if the defendant consciously disregarded the risk to Holland's life was more favorable to the defendant than the law required. The judge's instructions did not result in a substantial likelihood of a miscarriage of justice.

The defendant moved in the Superior Court for a new trial based on the newly available testimony of Stephen Fountaine, who had been a fugitive from justice at the time of the trial. The substance of Fountaine's anticipated testimony was that Fountaine heard Cirillo say that the defendant was not with him when he killed Holland. Fountaine so informed the State police. For purposes of this decision, we shall assume that newly "available" evidence is like newly "discovered" evidence and is subject to the same rules. The defendant does not urge us to do otherwise.

The motion for a new trial was considered by the judge who had presided at the trial. In his memorandum of decision denying the motion, the judge observed that, at the trial, "the Commonwealth presented direct and circumstantial evidence to show that the defendant and co-defendant [Cirillo] had opportunity, motive and means to commit the crime. The defendant and a co-defendant were observed with the victim prior to his death. The co-defendant testified as to the manner and means of the death. A witness observed two men whose characteristics matched those of the defendant and co-defendant abandon the victim's truck. And finally the defendant volunteered a false alibi at the time of his arrest and the second alibi offered by the defendant at trial was rebutted by the Commonwealth." Treating the defendant's motion as though it were based on newly discovered evidence, as we do, the judge correctly stated that "[a] defendant seeking a new trial on the ground of newly discovered evidence must establish both that the evidence is newly discovered and that it casts a real doubt on the justice of the conviction. *Commonwealth* v. *Grace*, 397 Mass. 303 [,305] (1986) citing

*Commonwealth* v. *Ortiz*, 393 Mass. 523 [,537-538] (1984).
. . . Fountaine's testimony is cumulative and like that of
John Cuoco, impeaches the credibility of Cirillo, the co-de-
fendant. Newly discovered evidence that tends merely to im-
peach the testimony of a witness does not ordinarily warrant
a new trial. *Commonwealth* v. *Ortiz*, [*supra*]. Based on the
evidence presented, the one distinction between Fountaine's
testimony and that of the other inmate's [John Cuoco] would
probably not have been a real factor in the jury delibera-
tions." We agree with the judge's ruling and reasoning.

After the parties had filed their appellate briefs in this
court, the defendant filed here another motion for a new trial
stating as grounds that, at the trial, the Commonwealth
"failed to disclose exculpatory, material evidence in violation
of an absolute obligation to disclose. This evidence was the
Notice of Alibi filed by the Co-Defendant John Cirillo. . . .
This material evidence flatly contradicted the testimony of
the Commonwealth's principal witness against him. . . .
Without this evidence, Mr. Simmons lost a vital opportunity
to cross examine and impeach the commonwealth's principal
witness against him. . . . The Commonwealth's failure to
disclose Cirillo's Notice of Alibi infected Mr. Simmons' first
trial with prejudicial, constitutional error because it denied
him due process of law." A single justice of this court denied
the defendant's motion without a hearing, and denied a mo-
tion to reconsider.

The notice of alibi to which the motion referred was filed
in connection with the case in which the Commonwealth
charged Cirillo with Holland's murder. Mass. R. Crim. P. 14
(b) (1), 378 Mass. 874 (1979). In that notice, which Cirillo's
counsel, but not Cirillo personally, signed, Cirillo stated that
"he was at the following locations during the period set forth
in the Commonwealth's Bill of Particulars: 1. From 11:00
P.M. August 25th, 1987 until 2:00 A.M. August 26th, 1987,
inside the Frontier Lounge, Springfield, Massachusetts. 2.
From 2:00 A.M. until approximately 3:00 A.M. in the parking
lot outside the Frontier Lounge, 19 Pearl Street, Springfield,
Massachusetts. 3. From approximately 3:00 A.M. until 11:30

A.M. at 99 Byer's Street, Springfield, Massachusetts. The Defendant reserves the right to call the following witnesses to establish his alibi: 1. David Rogers No known address 2. Patrick (no known last name) No known address 3. Raymond Pagan No known address 4. Hajal Sander No known address 5. Jason Winslow No known address"

The "degree of prejudice or possible prejudice that warrants or requires the granting of a new trial because the prosecution improperly failed to deliver exculpatory evidence to the defense" depends on whether "the prosecution has denied the defendant specifically requested exculpatory evidence." *Commonwealth* v. *Tucceri*, 412 Mass. 401, 412 (1992). If the prosecution has denied the defendant specifically requested exculpatory evidence, "a defendant need only demonstrate that a substantial basis exists for claiming prejudice from the nondisclosure." *Id.* In *Tucceri*, we also discussed the standard to be applied "when the defendant has made no request or . . . has made only a general request for exculpatory evidence." *Id.* at 412-415. However, the defendant in *Tucceri* was not charged as here with murder in the first degree, and therefore our decision was not controlled, as it is here, by G. L. c. 278, § 33E. Where the prosecution denies the defendant exculpatory evidence but the defendant has not requested it or has made only a general request, this court will order a new trial or reduction of the verdict whenever the court concludes that there has been a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. *Commonwealth* v. *Wright, supra* at 681.

On March 20, 1989, Cirillo pleaded guilty to murder in the second degree. Counsel for the defendant here (Simmons) requested that the prosecution provide him with a copy of a statement that counsel understood Cirillo had given to the district attorney before the plea hearing, and filed a motion to require that the statement be provided. It appears that, contrary to the belief of defendant's counsel, Cirillo did not give the district attorney a written statement. A judge in the Superior Court denied the defendant's motion. In his brief filed with the single justice in support of his second mo-

tion for a new trial, the defendant argued that his request for the statement counsel had understood Cirillo had given to the district attorney before the plea hearing qualifies as a "specific request" for the notice of alibi that the defendant says he was unaware of until after the case was entered in this court. The defendant argues that he is entitled to the standard of review applicable when the prosecution denies a defendant specifically requested exculpatory evidence. See *Commonwealth* v. *Tucceri, supra* at 412. A request is specific if it "provide[s] the Commonwealth with notice of the defendant['s] interest in a particular piece of evidence." *Commonwealth* v. *Wilson*, 381 Mass. 90, 109 (1980). We reject the defendant's argument. He did not specifically request Cirillo's notice of alibi.

We also reject the defendant's contention that the Commonwealth's failure to provide him the notice of alibi, even if not specifically requested, was so prejudicial to the defense that justice requires a new trial. In our view, it is highly unlikely that, if the jury had heard evidence of Cirillo's notice of alibi (even if it be attributed to him and not just his lawyer), the jury would have concluded that Cirillo, who pleaded guilty to Holland's murder, was not at the scene and was not with the defendant when Holland was killed. The Commonwealth's case was strong, and it would have been strong if Cirillo's notice of alibi had been made known to the jury. We are satisfied that there is no substantial likelihood of a miscarriage of justice.

*Judgment affirmed.*
*Denial of motions for post-*
*conviction relief affirmed.*