**Edward PAULDING, Petitioner,**

v.

**Peter ALLEN, Respondent.**

**No. CIV.A.03–10488–WGY.**

United States District Court, D. Massachusetts.

Feb. 13, 2004.

Stephen B. Hrones, Hrones & Harwood, Boston, MA, for Edward Paulding, Petitioner.

Dean A. Mazzone, Attorney General's Office, Boston, MA, for Peter Allen, Respondent.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

On March 13, 2003, Edward Paulding ("Paulding") filed the present petition for writ of habeas corpus, challenging his state conviction on two grounds: (1) "[i]t was a denial of due process [for the trial judge] to not define the elements of 2nd degree murder"; and (2) "[i]t was a denial of due process for the Supreme Judicial Court to require defining of the elements of 2nd degree murder but not apply it to the Petitioner." Pet. [Doc. No. 1] ¶ 12. The respondent, Peter Allen ("Allen"), moved to dismiss based on Paulding's failure to exhaust available state court remedies as to the second ground. [Doc. No. 7]. Having denied Allen's motion by order entered July 9, 2003, *see also* Mem. of 1/7/04 [Doc. No. 11], the Court here considers the merits of Paulding's petition.

## II. BACKGROUND

On Paulding's direct appeal, the Supreme Judicial Court determined that the jury could have found the following facts. *Commonwealth v. Paulding,* 438 Mass. 1, 3–6, 777 N.E.2d 135 (2002). On the night of August 23, 1996, Paulding arrived with Jose Duarte at Dennis Street Park in the Roxbury section of Boston. *Id.* at 3, 777 N.E.2d 135. There, Paulding and Duarte approached three men, Eliot Flores, Victor Fantauzzi, and the murder victim, who were sitting on a park bench smoking marijuana. *Id.* Duarte cocked and pointed a hand gun at the men, ordering them to "[r]un you all shit." *Id.* at 4, 777 N.E.2d 135. Understanding this to be a demand for their belongings, Flores and Fantauzzi handed Paulding a knife, chain, and Walkman, and the victim tossed his wallet on the ground toward Paulding. *Id.* Duarte then repeatedly asked Paulding, "Le tiru?," which Flores and Fantauzzi understood to be similar to the Spanish phrase meaning "Should I shoot?". *Id.* Flores, Fantauzzi, and the victim ran, and a shot was fired. *Id.* The victim, who suffered a gunshot wound to the back of his head, died the following day. *Id.* When subsequently questioned by the police, Paulding admitted that he had participated in the armed robbery. *Id.*

At trial, Paulding testified as the sole witness for the defense. *Id.* Paulding stated that he knew Duarte had a loaded gun and that he went with Duarte to the park to commit a robbery. *Id.* According to Paulding, after Flores, Fantauzzi, and the victim handed over their belongings, Duarte said "bounce," meaning "run," and the three men and Paulding ran in different directions. *Id.* Paulding then heard a shot. *Id.* Paulding testified that he did not know the meaning of "Le tiru?". *Id.*

The Commonwealth submitted the case to the jury solely on a theory of felony-murder in the first degree based on Paulding's participation in the armed robberies. *Id.* at 4–5, 777 N.E.2d 135. The trial judge instructed the jury fully and correctly on joint venture and the elements of armed robbery and felony-murder in the first degree. *Id.* at 5, 777 N.E.2d 135.

Her challenged instruction began with the provisions of Mass. Gen. Laws ch. 265, § 1, which reads:

> Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in

the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree. Petit treason shall be prosecuted and punished as murder. The degree of murder shall be found by the jury.

After defining felony-murder in the first degree and stating that it was the only theory before the jury, the judge instructed:

I told you that the statute [Mass. Gen. Laws ch. 265, § 1] provides that the degree of murder is always up to the jury and I've defined for you what felony-murder is. If you find the Commonwealth has proved all of the elements that I've told you that make up the crime of felony-murder in the first degree, you would find him guilty of that crime and you are, indeed, obligated to find a defendant guilty of the highest degree of crime that is proved beyond a reasonable doubt. But in the end the degree of murder, whether it is first degree or second degree is up to you as the jury.... And you will have with you on the verdict slip [with respect to the murder indictment the] options of finding the defendant not guilty of felony-murder, guilty of felony-murder in the first degree, or guilty of murder in the second degree and that's going to be up to you.

*Id.*

During deliberations, the jury asked, "What conditions have to be met to convict a person of murder in the second degree?". *Id.* The judge responded by repeating her instructions on the elements of felony-murder in the first degree and stating:

I did explain to you that under our murder statute it specifically provides that the degree of murder, whether it is first degree murder or second degree murder, is up to the jury. So you, as a jury, if you find that there was—that the Commonwealth has proved there was an unlawful killing of [the victim], and that the elements of felony-murder have been proved, in the end, it is up to you whether to find the defendant guilty of first degree murder or second degree murder.

And so that option of second degree murder is there because the statute vests in the jury the right to determine the degree of murder. But I cannot explain to you any more factors or conditions on that.

*Id.* at 6, 777 N.E.2d 135. Paulding's trial counsel objected timely to the judge's failure to instruct the jury on the three prongs of malice that could warrant a verdict of murder in the second degree. *Id.*

After being convicted of three charges of armed robbery, unlawful possession of a firearm, and felony-murder in the first degree, Paulding appealed to the Supreme Judicial Court. *Id.* The Supreme Judicial Court, rejecting Paulding's assertions of error, affirmed Paulding's conviction of felony-murder in the first degree as well as his convictions of unlawful possession of a firearm and two charges of armed robbery. *Id.* at 3, 777 N.E.2d 135. Although Paulding charged no error in his convictions of armed robbery, the court vacated one of the charges as duplicative. *Id.* at 13, 777 N.E.2d 135.

With respect to the conviction of first degree felony-murder challenged here, Paulding's appellate counsel argued that the trial judge violated Mass. Gen. Laws ch. 265, § 1 [1] and Paulding's federal due

1. In *Commonwealth v. Brown*, 392 Mass. 632, 467 N.E.2d 188 (1984), the Supreme Judicial

process rights when she instructed the jury that they could find him guilty of second degree murder, but refused to instruct on its elements. *Id.* The Supreme Judicial Court disagreed, rejecting its previous construction of Mass. Gen. Laws ch. 265, § 1 as it applied to "circumstances where the Commonwealth proceeds (and the judge rules that there is evidence) only on the theory of felony-murder in the first degree." *Id.* at 10, 777 N.E.2d 135. In such circumstances, no instruction on the elements of murder in the second degree was necessary. *Id.* In Paulding's case, because there was "no evidence of malice . . . to support a conviction of murder in the second degree, and no evidence of a felony supporting a verdict on all elements of felony-murder in the second degree," the Supreme Judicial Court determined that "the defendant cannot show that the judge's failure to define the elements of murder in the second degree prejudiced him in any way." *Id.* at 11, 777 N.E.2d 135.

Paulding's counsel filed a Petition for Rehearing, challenging both the "change [in] the rules" and the finding that there was "no evidence of malice." Resp't Supp. Answer [Doc. No. 6], Ex. 4 (Pet. for Reh'g) at 2. Paulding's counsel urged reconsideration under "the law in existence at his trial," or alternatively, under "the new rule." *Id.* Under the new rule, counsel maintained, the record supported a finding of malice that warranted a second degree murder instruction because "the defendant had no intent to kill but was involved in a very dangerous felony with a gun that the defendant and any reasonable person would believe might result in a death." *Id.* The Supreme Judicial Court denied the

Petition for Rehearing on December 15, 2002. Pet. ¶ 11.

As stated above, Paulding then filed the present petition for writ of habeas corpus, which raises two grounds for relief. Pet. ¶ 12. The respondent, Allen, moved to dismiss based on Paulding's failure to exhaust available state court remedies as to the second ground. Resp't Mot. to Dismiss at 1. The Court, having denied Allen's motion after hearing oral argument on July 9, 2003, proceeds to address the merits of Paulding's petition.

## III. DISCUSSION

### A. Standard of Review

Because Paulding's claims were adjudicated on their merits in the state court proceedings, *see* Mem. of 1/7/04, the standard outlined by the Antiterrorism and Effective Death Penalty Act ("AEDPA") permits habeas relief only if the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). With respect to the "contrary to" and "unreasonable application" clauses, the Supreme Court has explained: A state court decision is "contrary to" established federal law if it "arrives at a conclusion opposite to that reached by this Court on a question of law," or "confronts facts that are materially indistinguishable

---

Court held that Mass. Gen. Laws ch. 265, § 1 "requires a trial judge to instruct on murder in the first and second degrees if there is evidence of murder in the first degree, even though there appears to be no hypothesis in

the evidence to support a verdict of murder in the second degree." *Brown*, 392 Mass. at 645, 467 N.E.2d 188 (citing *Commonwealth v. Dickerson*, 372 Mass. 783, 795–96, 364 N.E.2d 1052 (1977)).

from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of established federal law if it "identifies the correct governing legal rule" but "unreasonably applies," "unreasonably extends," or "unreasonably refuses to extend" that rule. *Id.* at 407, 120 S.Ct. 1495. With respect to the "unreasonable determination of the facts" clause, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With this framework in mind, the Court considers the two grounds raised by Paulding's petition in turn.

## B. Superior Court's Instruction

■ Paulding first argues that the trial court's refusal to instruct on the elements of second degree murder violated Mass. Gen. Laws ch. 265, § 1 and his federal due process rights. Pet'r Mem. [Doc. No. 9] at 8–12. Because the Supreme Judicial Court found no violation of the Massachusetts statute and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," this Court limits its analysis to Paulding's federal due process claim. *See Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (noting and reemphasizing the Supreme Court's numerous statements that "federal habeas corpus relief does not lie for errors of state law" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and citing *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984))).

Paulding alleges that the trial court's instructions effectively compelled the jury to convict him of felony-murder in the first degree "without being able to evaluate all of its options." Pet'r Mem. at 12. This, Paulding contends, was "a blatant violation of defendant's due process rights." *Id.* The Supreme Court, however, has left open the question whether due process requires that a lesser included offense be included among jurors' "options" in a noncapital case. In *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), which held that a lesser included offense instruction is constitutionally required in a capital case when the evidence would support conviction of such an offense, *id.* at 627, 100 S.Ct. 2382, the Supreme Court expressly declined to decide "whether the Due Process Clause would require the giving of such instructions in a noncapital case." *Id.* at 638 n. 14, 100 S.Ct. 2382. The circuit courts that have considered extending *Beck*'s holding to noncapital cases are divided. *See Tata v. Carver*, 917 F.2d 670, 671–72 (1st Cir.1990) (citing the decisions of other circuits, some of which noted the significant difference between the death penalty and lesser punishments and concluded that in the latter context, "the absence of a lesser included offense instruction raises no federal due process issue," and others of which found constitutional error "whenever the evidence would support a conviction either on the charged offense or on an uncharged 'lesser included offense,' or both"). Given this split in authority, the Supreme Judicial Court's conclusion that a lesser included offense instruction was not required under the circumstances of Paulding's noncapital case cannot be said to be contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United

States."[2] *See* 28 U.S.C. § 2254(d)(1); *Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495.

 Paulding also argues that the trial court impermissibly "relieved the government of the burden of proving beyond a reasonable doubt that Defendant Paulding committed first-degree murder, rather than possibly second-degree murder." Pet'r Mem. at 12. Like the Supreme Judicial Court, *see Paulding,* 438 Mass. at 11, 777 N.E.2d 135, this Court disagrees. The government's constitutional burden of proof applies only to "every fact necessary to constitute the crime." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Under Massachusetts law, first degree murder is distinguished from second degree murder in that murder in the first degree is "committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life." Mass. Gen. Laws ch. 265, § 1; *Commonwealth v. Sires,* 413 Mass. 292, 297 n. 4, 596 N.E.2d 1018 (1992). The crime of felony-murder in this way "substitutes the intent to commit the underlying felony for the malice aforethought required for murder." *Commonwealth v. Matchett,* 386 Mass. 492, 502, 436 N.E.2d 400 (1982). Thus, contrary to Paulding's implicit assumption, the Commonwealth need not have established malice independent of the elements of joint venture, armed robbery (a crime punishable with imprisonment for life, Mass. Gen. Laws ch. 265, § 17), and felo-

ny-murder in the first degree. With respect to these elements, the Supreme Judicial Court found, and Paulding does not contest, that "the judge instructed fully and correctly." *Paulding,* 438 Mass. at 5, 777 N.E.2d 135.

### B. Supreme Court's Affirmation

 On the second ground raised by his petition, Paulding asserts: "It was a denial of due process for the Supreme Judicial Court to require the defining of the elements of 2nd degree murder but not apply it to the Petitioner." Pet. ¶ 12B. This second ground, like Paulding's Petition for Rehearing, appears to challenge the Supreme Judicial Court's ruling as both legally and factually erroneous—that the Supreme Court (1) "den[ied] Petitioner the benefit of long-established law" in overruling its prior interpretations of Mass. Gen. Laws ch. 265, § 1; and (2) misapplied its new interpretation to the facts of Paulding's case. Pet'r Mem. at 13–15; Pet. for Reh'g at 2–3.

Paulding's charge of legal error suggests that the Supreme Judicial Court could not fairly give retroactive effect to its "startling" opinion, which raised "brand new unanticipated legal issues." Pet'r Mem. at 14. Supreme Court precedent, however, indicates otherwise. While the Supreme Court has placed limits on the retroactive application of an "unexpected and indefensible" construction of a criminal statute, its decisions have rested on "concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionali-

---

**2.** Moreover, even under the federal law that has been clearly established—specifically, the law applicable to capital cases—the Supreme Court has emphasized that "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d

367 (1982) (emphasis in original). Here, the Supreme Judicial Court determined that no such evidence existed. *Paulding,* 438 Mass. at 11, 777 N.E.2d 135. As discussed more fully below, this Court must presume the correctness of this determination. *See, infra,* section II.B.

ty of attaching criminal penalties to what previously had been innocent conduct." *Rogers v. Tennessee*, 532 U.S. 451, 457–59, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).

This Court can detect no deprivation of Paulding's right to fair warning of the criminal penalties attached to his conduct. In cases extending back to *Dickerson*—the same decision that Paulding cites as the source of "long-established law," Pet'r Mem. at 14—the Supreme Judicial Court has made clear that the conduct of which Paulding was convicted warrants a verdict of first degree felony-murder. *See Dickerson*, 372 Mass. at 797, 364 N.E.2d 1052 ("Where a jury reach a determination that the statutory 'circumstance' (in this case armed robbery-murder) has been met, they should return a verdict of murder in the first degree.")), *overruled on other grounds by Paulding*, 438 Mass. at 10, 777 N.E.2d 135; *Commonwealth v. Johnson*, 399 Mass. 14, 16, 502 N.E.2d 506 (1987) ("An instruction that even if they found that the killing had been committed during the commission of a felony punishable by life imprisonment, they might return a verdict of either murder in the first degree or murder in the second degree is erroneous." (quoting *Commonwealth v. Stewart*, 375 Mass. 380, 390, 377 N.E.2d 693 (1978) (internal quotation marks omitted)), *abrogated on other grounds by Paulding*, 438 Mass. at 28 n. 2, 777 N.E.2d 135. By eliminating the requirement that trial judges instruct on second degree murder under these circumstances, the Supreme Judicial Court did not extend the application of the Massachusetts murder statute, but rather permitted trial judges to explain the statute's existing applications without introducing "unavoidable inconsistency" into their instructions. *Paulding*, 438 Mass. at 9, 777 N.E.2d 135 (quoting *Commonwealth v. Gaskins*, 419 Mass. 809,

647 N.E.2d 429 (1995), which described the tension between a "judge's reference to the jury's power to decide the degree of murder and at almost the same time telling them that the evidence did not warrant a guilty finding of second degree felony-murder," *id.* at 813, 647 N.E.2d 429, *abrogated on other grounds by Paulding*, 438 Mass. at 28 n. 2, 777 N.E.2d 135).

In the alternative, Paulding asserts a factual error, claiming that the Supreme Judicial Court "inexplicably declar[ed] that there was no evidence of malice in the case at bar." Pet'r Mem. at 13. Under the AEDPA standards summarized earlier, this Court must presume the correctness of the Supreme Judicial Court's factual determinations and impose upon Paulding the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The only evidence concerning malice that Paulding has produced is the fact that he "had no intent to kill but was involved in a dangerous felony ... that the Petitioner and any reasonable person would believe might result in death." Pet'r Mem. at 14. Yet contrary to Paulding's assertions, such evidence does not "strongly support[ ] second-degree murder." *Id.* at 13.

Significantly, the "dangerous felony" in which Paulding was involved was armed robbery. As stated above, the Supreme Judicial Court has made clear that an unlawful killing in the commission of an armed robbery does *not* support a conviction of murder in the second degree. *See Paulding*, 438 Mass. at 11, 777 N.E.2d 135 (citing *Johnson*, 399 Mass. at 16, 502 N.E.2d 506). Rather, a finding of armed robbery-murder supports a verdict of felony-murder in the first degree, which "is not properly reduced, on the basis of extenuating circumstances ... to murder in

the second degree." [3] *Dickerson*, 372 Mass. at 797, 364 N.E.2d 1052. Given this lack of clear and convincing evidence, the Court accepts the Supreme Judicial Court's determination that the record contained no evidence supporting a verdict of felony-murder in the second-degree as both presumptively correct and reasonable. *Paulding*, 438 Mass. at 11, 777 N.E.2d 135.

### III. CONCLUSION

In sum, the Supreme Judicial Court's previous rejections of Paulding's due process claims were neither contrary to nor unreasonable applications of clearly established federal law. Nor were these decisions based on an unreasonable determination of the facts. Accordingly, Paulding's Petition for Writ of Habeas Corpus [Doc. No. 1] is DENIED.

SO ORDERED.

---

**3.** For this reason, the Supreme Judicial Court determined that the trial judge's instruction was not only sufficient, but also more generous, at least in part, than that to which Paulding was entitled:

The defendant in this case received an instruction to which he was not entitled, but from which he stood potentially to benefit.

The jurors were told, essentially, that they could return a verdict of murder in the second degree even if they found the defendant had committed an unlawful killing during the commission or attempted commission of an armed robbery.

*Paulding*, 438 Mass. at 10–11, 777 N.E.2d 135.